## THE STATE *vs.* WILLIAM ALLEN.

In the course of a trial for murder, and after witnesses had been examined on the part of the State, the prisoner's counsel stated to the court that they had been informed and believed that one of the jurors was disqualified by having before the trial expressed an opinion that the prisoner was guilty, and asked the court to suspend the trial and hear evidence upon the point. The court heard the evidence, and upon it the prisoner's counsel claimed that the disqualification of the juror had been proved, and asked the court so to find. The court so found. They then offered to waive the disqualification and proceed with the trial with the juror in question on the panel, or to go on with eleven jurors. The court refused to do either, and discharged the jury. Held that these facts did not operate as a bar to the further prosecution of the prisoner.

It was claimed upon the argument that the conclusion of the court that the juror was disqualified was not warranted by the facts found. Held to be a sufficient answer to this claim that the finding to that effect was made at the request of the prisoner's counsel.

State *v.* Allen.

That a juror has declared an opinion beforehand that the accused is guilty is a ground of challenge at common law, and the rule is the same in this state.

A mere impression that an accused person is guilty, from hearing or reading reports of the transaction, would not ordinarily disqualify a person from sitting as a juror, because his mind would not generally be so affected thereby as to disturb his impartiality as a juror. Such an impression hardly deserves the name of an opinion.

The mere finding that the juror in the above case was disqualified made him no longer one of the panel.

The offer of the prisoner's counsel to waive the disqualification came too late. The court could not then be required to re-instate the discharged juror.

If the court had any discretionary power to do so, it acted wisely in refusing to do it. A person situated as this juror would have been if restored to the panel, ought not to sit in a capital case.

Without an acceptance by the State of the offer to go on with eleven jurors they could not have rendered a good verdict. Whether it would have been good with such consent: *Quære.*

INDICTMENT for murder in the first degree, in the Superior Court in Hartford County. The prisoner filed the following motion to be discharged :—

And the said William Allen in his own proper person cometh into court here, and having heard the said indictment read, saith that the said State of Connecticut ought not to further prosecute the said indictment against him; because he saith that heretofore, to wit, at a criminal term of said court, holden at Hartford within and for the county of Hartford on the first Tuesday of March, A. D. 1878, the said Allen in due form of law, upon an indictment duly presented and found and in all respects legal, was arraigned and pleaded not guilty of the premises contained in the said indictment, and for his trial put himself upon his country, and was by the said State of Connecticut in due form of law placed on his trial before a jury of his said country duly and legally impaneled and sworn and charged with the trial of said cause; and that the crime charged against him in the said indictment upon which he was so arraigned and to which he pleaded and was put on trial as aforesaid, was and is the same crime and identical with the crime charged in the indictment to which he now makes this motion, and the said indictment was and is the same and identical with this indictment to which he now makes this motion.

And the said William Allen further says that at said criminal term of said court held on the first Tuesday of March, A. D. 1878, to wit, on the 12th day of March, A. D. 1878, when the said jury was impaneled as aforesaid, each and every member of the said jury prior to his acceptance as such juror, and before being placed upon the panel and sworn as a juror in said cause, was both on behalf of the State of Connecticut and on behalf the said Allen, duly and legally questioned and inquired of as to his qualifications as a juror in the trial of said cause, and after such particular examination of each of said jurors, a full, complete and lawfully constituted jury was duly impaneled and sworn for the trial of said indictment upon which the said Allen had been arraigned, and said jury was thereupon charged with the trial of said Allen upon the said indictment, and the trial of the said Allen upon said indictment was then proceeded with in all respects according to law, and witnesses were examined thereon on behalf of the State of Connecticut before said court and jury in all respects according to law, until the afternoon of the 14th day of March, 1878, when one of the counsel of said Allen was informed that David H. Gale, a member of said jury, and before he had been sworn as a juror in said cause, had expressed an opinion therein, that the said William Allen was guilty; and thereupon the said counsel for said Allen called the attention of the court to the information which he had so received, and requested the court to postpone the further trial of said cause until Friday morning, March 15th, 1878, at 10 o'clock in the forenoon, in order to give him an opportunity to ascertain and determine as to the rights of said Allen, and as to what course should be taken as to the further trial of said cause before said jury; and thereupon the court did postpone the further trial of said cause until Friday, March 15th, 1878, at 10 o'clock in the forenoon.

And the said William Allen further saith that, after a full consideration of the qualifications of said juror, David H. Gale, to try the said indictment as a member of said jury, he decided to waive the disqualification, if any existed, against the said Gale, and that he would proceed with said trial before

said jury, and thereupon on said 15th day of March, 1878, after the said court had been duly opened for the trial of said cause, he, the said Allen, offered to waive, and did waive, any disqualification of the said Gale to act as a member of said jury upon the trial of said cause, and offered to waive and did waive any and all objections to the verdict which might be rendered by said jury as so constituted; and the said William Allen further saith that he also at the same time offered to waive all objections and accept a verdict of the eleven jurors in said cause, exclusive of the said Gale.

And the said William Allen further saith that if the said David H. Gale, before being sworn as such juror, had expressed an opinion as to the guilt of said Allen, it did not appear upon the examination of such juror prior to his acceptance, and it was not in fact the case that said Gale had formed a settled opinion in said cause, and that he could not try the case fully and impartially on the evidence.

Wherefore the said William Allen saith that the said jury was duly impaneled and sworn and charged with the trial of said cause, and was in all respects a legally constituted jury qualified to try said cause, but the said court, on the said 15th day of March, 1878, notwithstanding the said facts, against the protests and objections of the said Allen, and without his consent, did, without legal necessity, unlawfully and without right, dismiss and discharge the said jury in said cause.

And the said William Allen further saith that he, the said Allen, now making this motion, and the William Allen in said indictment mentioned, are the same identical person; all of which he is ready to verify.

Wherefore, he, the said William Allen, says that he has once before been put in jeopardy of his life for the same offence as charged in this indictment, upon which he makes this motion, and says that he ought not to be put to further trial upon said indictment, and that the said State of Connecticut ought not further to prosecute him on account of the premises in this indictment contained and charged, and moves that he may be discharged from custody, dismissed the court, and allowed to go without day.

And the said William Allen for further motion cometh into court in his own proper person, and having heard the said indictment read, saith that the said State of Connecticut ought not further to prosecute its said indictment against him, because he saith that he has once before this time been put in jeopardy of his life for the said offence charged in this indictment against him, by being put upon trial in the Superior Court of Hartford County in said state, at the criminal term thereof held on the first Tuesday of March, A. D., 1878, under the same indictment to which he now makes this motion, which said indictment was and is good in law and duly found by the grand jury of said county, and that thereupon he was then and there arraigned and did plead not guilty of the premises contained in the said indictment, and for his trial put himself on his country, whereupon he was by the said State of Connecticut in due form of law placed on his trial before a jury of his said country, duly and legally impaneled and sworn and charged with the trial of said cause, and the witnesses for said State were duly sworn and examined, and said trial was proceeded with in all respects according to law for the space of three days before said jury, at which stage of the trial, without the consent of the said Allen, and without legal necessity, the said court unlawfully discharged said jury and remanded the defendant to prison; and the said William Allen says that he and the said William Allen so arraigned and put upon trial as aforesaid, are identical and the same person, and that the offence charged in said indictment upon which he was so arraigned, did plead, and was put upon trial, was and is the same supposed offence charged in this indictment and no other.

Wherefore he says he was legally acquitted of the premises in and by the said indictment specified and charged upon him; all of which he is ready to verify; wherefore he says that said indictment ought not to be further prosecuted against him, and moves that he be discharged from custody, dismissed the court, and permitted to go without day.

And the said William Allen in his own proper person comes into court and further says that by reason of all the

facts aforesaid he has been denied the right of a speedy trial by an impartial jury, and further, that the right of trial by jury has been denied to him upon the said indictment, and by reason of the facts aforesaid cannot now be granted to him. Wherefore he says that he ought not to be required further to answer or plead to the said indictment, or be put to further trial thereon. He therefore moves that he be discharged from custody, dismissed the court, and suffered to go without day.

The court found the allegations of the foregoing motion of the prisoner to be true, except so far as qualified or varied by the following finding of the court at the former term at which the jury were discharged.

Be it remembered, that upon the trial of this cause to the jury, being an indictment for murder in the first degree, on the second day of the trial, counsel for the accused stated to the court that they had been informed and believed that David H. Gale, one of the jurors sworn in said cause, was disqualified to sit as such juror, for the reason that before being so sworn he had formed and expressed the opinion that the accused was guilty of the crime for which he had been indicted; and they asked the court to suspend the trial and hear such witnesses as they were prepared to offer for the purpose of proving such disqualification. The court granted the motion, suspended the trial, and heard evidence offered by the counsel for the accused in support of said charge of disqualification. The Attorney for the State offered no evidence. Thereupon the counsel for the accused claimed that they had established, by the evidence offered and heard, the fact that said juror was disqualified, and asked the court so to find as a fact, and declare. Upon the testimony offered by the counsel for the accused, the court did find as a fact proven that said juror had expressed an opinion, before he was sworn as such juror, that the accused was guilty of the crime wherewith he was charged, and that he was disqualified to sit as a juror in said cause, and did so declare. Thereupon the counsel for the accused asked for time in which to consider what course they would adopt. The court granted them time until the opening of the court on the next day, when they offered

to accept such disqualified juror, and to waive his disqualification and proceed with said trial with said disqualified juror as one of the panel. The court refused to accept said waiver, and refused to allow the trial to proceed with such disqualified juror as one of the panel. To this ruling the counsel for the accused excepted.

The waiver of the disqualification of the juror by the prisoner's counsel was as follows:—

The said William Allen in court waives any and all objections to the qualification of David H. Gale, one of the jurors in said cause, and consents that the trial go on with the said David H. Gale upon the panel, or with a panel of eleven jurors, if the court should excuse the said David H. Gale. And the said William Allen objects to the discharge of said jury, and requests the court to order the trial to proceed, notwithstanding said disqualification, the same being waived.

Upon these facts the case was reserved for the advice of this court.

*C. J. Cole* and *S. F. Jones*, in support of the motion.

1. The prisoner had the right and power to waive the disqualification of the juror, and thus qualify the jury to try the case. *Cancemi* v. *The People*, 18 N. York, 128, 137; *Van Blaricum* v. *The People*, 16 Ill., 364; *State* v. *Klinger*, 46 Misso., 224; *State* v. *Waters*, 62 id., 196; *McClure* v. *The State*, 1 Yerg., 206; *Malone* v. *The State*, 8 Geo., 408; *Keener* v. *The State*, 18 id., 194; *People* v. *Chung Lit*, 17 Cal., 321; *People* v. *Coffman*, 24 id., 230; *Kingen* v. *The State*, 46 Ind., 132; *Com.* v. *Jones*, 1 Leigh, 614; *State* v. *Howard*, 17 N. Hamp., 171.

2. The right of challenge terminates when the jury are sworn, and they can not be discharged for any cause existing at the time they were sworn. *Wharton's Case*, Yelv., 24; 2 Hawk. P. C., 579; 3 Bac. Abr., 764; Coke Litt., 158 *a*, 227 *b;* 4 Black. Com., 360; *Rex* v. *Brandreth*, 32 How. State Trials, 755; *Regina* v. *Wardle*, 1 Car. & Marsh., 647; *State* v. *Howard*, 17 N. Hamp., 171, 186; *McClure* v. *The State*, 1 Yerg., 206; *Ward* v. *The State*, 1 Humph., 254.

3. The juror Gale was not, upon the facts found, disqualified. In *State* v. *Wilson*, supra, BUTLER, C. J., giving the opinion of the court says:—"The opinion must be formed in such a way, or be of such a character, that hostility or prejudice toward the prisoner may be inferred from its existence or expression. But hostility or prejudice cannot, as a rule, be inferred from an opinion found and expressed simply from reading, or hearing stated, as current news of the day, the fact of a homicide and the circumstances attending it. There should be found some other circumstances of relationship, partiality, prejudice, hostility, or ill will, acting at the same time upon the mind and giving it a bias, or the juror should be accepted." "The formation and expression of an opinion relative to the guilt or innocence of a prisoner from report, does not disqualify a person from serving as a juror on his trial." *Thompson* v. *The State*, 24 Geo., 297. "It has been supposed that an opinion of guilt, founded on newspaper reports or other information, or on personal knowledge, disqualifies a man from being a juror. But this is not so. *   *   A declaration of opinion to disqualify a juror, therefore, must be such an one as implies *malice or ill will* against the prisoner." *State* v. *Fox*, 1 Dutch., 566. "The weight of authority appears to be that the expression of opinion, unless under circumstances indicating malice or ill will, or perhaps a fixed determination, is only a ground of challenge to the favor." Parker, C. J., in *State* v. *Howard*, 17 N. Hamp., 192. The authorities are ample to this effect. *State* v. *Potter*, 18 Conn., 171; *State* v. *Spencer*, 1 Zabr., 196; *Wright* v. *The State*, 18 Geo., 383; *State* v. *Davis*, 29 Misso., 391; *State* v. *Bungen*, 14 Louis. Ann., 461; 1 Bishop Crim. Proc., § 825.

4. The effect of the discharge of the jury was to discharge the prisoner also. There having been no legal necessity for the discharge, the court had no power to discharge them. "No person shall be subject for the same offense to be twice put in jeopardy of life or limb." U. S. Const., 5th Amendment. The plea of former acquittal is grounded upon this universal maxim of the common law of England, that no

man is to be brought into jeopardy of his life more than once for the same offense. 4 Black. Com., 335. The courts of all the states receive the provision of the United States constitution as expressive of the true common law rule. 1 Bishop Crim. Law, § 650. To the extent of the provision referred to, the constitution is but declaratory of the common law, which declared that no man should be twice convicted or twice put in peril of legal penalties for the same offense. *Klock* v. *The People*, 2 Parker Cr. R., 682; Bouvier Law Dic., *Jeopardy*. A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon an indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they are impaneled and sworn. The defendant then becomes entitled to a verdict which shall be a bar to a new prosecution. Cooley's Const. Lim., 327. All the authorities support this proposition. *Conway* v. *The Queen*, 1 Cox C. C., 210; *Rex* v. *Kell*, 1 Crawf. & Dix, 151; *Com.* v. *Cook*, 6 Serg. & R., 577; *Com.* v. *Clue*, 3 Rawle, 498; *State* v. *Garrigues*, 1 Hayw., 241; *Matter of Spier*, 1 Dev., 491; *Williams's case*, 2 Gratt., 568; *Ex parte Vincent*, 43 Ala., 402; *Grogan* v. *The State*, 44 id., 9; *Bell* v. *The State*, id., 393; *Klock* v. *The People*, 2 Parker Cr. R., 676; *Grant* v. *The People*, 4 id., 527; *People* v. *Barrett*, 2 Caines, 304; *Shepherd* v. *The People*, 25 N. York, 406; *Wright* v. *The State*, 5 Ind., 290; *Kingen* v. *The State*, 46 Ind., 132; *Ward* v. *The State*, 1 Humph., 254; *Mounts* v. *The State*, 14 Ohio, 303; *Dobbins* v. *The State*, 14 Ohio S. R., 502; *Hines* v. *The State*, 24 id., 137; *O'Brian* v. *Commonwealth*, 9 Bush, 333; *Nolan* v. *The State*, 55 Geo., 521; *State* v. *McKee*, 1 Bailey, 651, 654, 656; *Lee* v. *The State*, 26 Ark., 260; *State* v. *Howard*, 17 N. Hamp., 171; 1 Bishop Crim. Law, § 669; 1 Bishop Crim. Proc., § 825.

5. The rule we are stating is applied with special strictness in capital cases—and the authorities make a distinction between cases of that character and those of which the punishment does not extend to life or limb. *People* v. *Ellis*, 15

Wend., 371; *U. States* v. *Gibert*, 2 Sumn., 19, 43, 45, 55; *U. States* v. *Perez*, 9 Wheat., 579; *U. States* v. *Coolidge*, 2 Gall., 363; *U. States* v. *Morris*, 1 Curtis C. C., 23.

*W. Hamersley*, State's Attorney, and *W. W. Perry*, contra.

The question is, has the Superior Court, during a trial for a capital offense, power to discharge the jury and remand the prisoner for trial on the same indictment, upon ascertaining the fact that a member of the panel is disqualified to sit as a juror? This question must be determined in accordance with the principles of the common law. Our state constitution contains no clause in affirmance of the common law rule that no man shall be put twice in jeopardy for the same offense. Article 5th of the amendments of the United States constitution, affirming this rule, applies only to federal courts. 1 Bish. Cr. Law, § 981; *Colt* v. *Eves*, 12 Conn., 251; *Edwards* v. *Elliott*, 21 Wall., 557; *Walker* v. *Sauvinet*, 92 U. S. Reps., 90; *Barrow* v. *Mayor &c. of Baltimore*, 7 Pet., 243. It is a settled rule of the common law that "no man shall be put twice in jeopardy of trial for the same felony." And that rule doubtless prevails in its full force in this state. It is based upon a fundamental principle of justice, and should be received as authority in every system of jurisprudence. When a man has been legally tried, and acquitted or convicted by lawful verdict of the jury, there is little difficulty about the application of the rule. But the rule goes a step further, and holds that a man after he has been lawfully indicted and put to plead, and his cause delivered to a lawfully impaneled jury, is entitled to a verdict from the jury, unless the jury is discharged by the court for sufficient cause; and that a discharge of the jury without sufficient cause is error. In determining what is sufficient cause for the discharge of a jury without verdict, the real question of difficulty and conflict of authorities arise.

In applying the tests to any particular case, in order to determine whether a jury has been lawfully or unlawfully discharged, we revert—first, to the principles that underlie, as well the general rule as its particular exceptions; secondly, to the authority of jurists and of decided cases.

The general rule that a jury once lawfully impaneled cannot be discharged until it has rendered its verdict, is based upon obvious principles of justice; though one of the strongest reasons for the rule in early times is removed by the statute of limitations now in force in this state. But the rule was recognized for the purpose of promoting the due administration of justice, and for that purpose only. And so the rule was never recognized as absolute, but always with this qualification, "except for just and sufficient cause." The cast-iron statement of the general rule contained in Coke's Inst., and in the oft-quoted note in Carthew, is as devoid of judicial authority as it is of common sense and reason. The lack of authority as well as of reason for such statement is clearly demonstrated in the Kinloch case, and in the opinion of Judge Kent in *People* v. *Olcott*, cited at length in *State* v. *Woodruff*, 2 Day, 507. The general rule is based upon the broad principle of justice, that a man charged with crime and once fairly tried, ought not to be tried again for the same crime; to do so would be clearly unjust. And the same principle teaches that it is also unjust to partly try a man for a crime, and then, without cause, to stop the trial, remand him to jail perhaps, and compel him to incur the hazards of a fresh start. But this, like all rules in the interest of justice, is subject to the limitations of necessity and to the qualifying influence of conflicting principles of justice.

It is a paramount principle of justice that a man lawfully charged with crime should be tried; and if, after trial commenced, any necessity arises which prevents the completion of the trial, it is not against justice, but in favor of justice, to discharge the jury and begin another trial. Again, it is a paramount principle of justice that every trial should be had, not only before a legally constituted, but before a legally impartial tribunal. So, whenever in the course of a trial the court becomes satisfied that the fountain of justice is poisoned, and that the trial cannot proceed without manifest injustice, it is not merely the right, but the imperative duty of the court to interpose, and to give the accused a new trial in the interest of impartial justice.

If we turn from these plain principles of justice, which no law can alter without stamping the law itself with disgrace, to the opinions of jurists and to reported cases, we find the principles supported and enforced by the highest authority. The general rule in its earliest form is, that "a jury sworn and charged by the court, cannot be discharged by the court, but they ought to give a verdict." But that there are exceptions to the rule is as well settled as the rule itself. The law upon this point was authoritatively declared in England in 1746. *Kinloch's case,* Foster's Crown Law, 16. The same principle has been declared by the Supreme Court of the United States. "We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware that there is some diversity of opinion and practice on this subject in the American courts; but, after weighing the question with due deliberation, we are of opinion that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial." Story, J., *U. States* v. *Perez,* 9 Wheat., 579. The same principle was early recognized in Connecticut. *State* v. *Woodruff,* 2 Day, 504.

But the true nature of the exceptions and the governing principle upon which they are based can be best learned by

a consideration of the circumstances which courts have held to justify a discharge of the jury without verdict.

It has been held that a jury may properly be discharged without a verdict, in the following cases:—In case of the sickness of the judge. *Nugent* v. *The State*, 4 Stew. & Port., 72. In case of the sickness of a juror. *Rex* v. *Scalbert*, 2 Leach, 620; *Rex* v. *Edwards*, 3 Campb., 207; *Com.* v. *Merrill*, Thacher Crim. C., 1. In case of the sickness of the prisoner. *Rex* v. *Stevenson*, 2 Leach, 546; *Rex* v. *Streek*, 2 Car. & P., 413; *State* v. *McKee*, 1 Bailey, 651. In case of the expiration of the term of court during the progress of the trial. *Regina* v. *Newton*, 3 Cox C. C., 489; *State* v. *McLemour*, 2 Hill (S. C.,) 680. In case of the inability of the jury to agree. *Regina* v. *Charlesworth*, 1 Best & Sm., 460; *Regina* v. *Davison*, 2 Fos. & Fin., 252; *Winsor* v. *Regina*, L. Reps., 1 Q. B., 289; *People* v. *Olcott*, 2 Johns. Cas., 301; *People* v. *Goodwin*, 18 Johns., 187; *Com.* v. *Bowden*, 9 Mass., 494; *Com.* v. *Purchase*, 2 Pick., 521; *Com.* v. *Roby*, 12 id., 503; *Hoffman* v. *The State*, 20 Maryl., 425; *State* v. *Updike*, 4 Harr., 581; *Hurley* v. *The State*, 6 Ohio, 399; *Price* v. *The State*, 36 Miss., 533; *State* v. *White*, 19 Kansas, 445; *U. States* v. *Perez*, 9 Wheat., 579; *State* v. *Woodruff*, 2 Day, 504; 1 Bishop Crim. Law, § 1033. The only ground broad enough to support the cases which hold that courts have a discretionary power to discharge juries failing to agree, is found in the fact that a denial of such power would result in great injustice. And it is upon this broad ground that the United States Supreme Court rests its decision in the *Perez case*. It follows that in this state, which fully recognizes the discretionary power of the court to discharge a divided jury, the principle upon which that power rests must also be recognized and applied to other exigencies that may arise in the course of a trial, as well as to the accident of a disagreeing jury. Thus it may be done in the case of influence exerted upon the jury against the prosecution by the officer in charge of the jury. *State* v. *Wiseman*, 68 N. Car., 203. And in the case of the misconduct or incapacity of a juror. *U. States* v. *Morris*, 1 Curtis C. C., 23; *People*

v. *Damon*, 13 Wend., 351; *Stone* v. *The People*, 2 Scam., 326; *Dilworth* v. *Commonwealth*, 12 Gratt., 689; *Regina* v. *Ward*, 10 Cox C. C., 573; *State* v. *Tuller*, 34 Conn., 280. Both upon principle and authority the duty of the court to continue each trial once commenced until a verdict is received is limited by the necessities of each case, and is controlled by the paramount duty of the court to suffer no trial to proceed after it is certified of facts that render the trial a violation of the vital principles of justice.

In the case at bar, upon the application of the prisoner, the court ascertained and found, as a fact, that one of the jurors had formed and expressed the opinion that the accused was guilty of the crime alleged against him, and further found as a fact that he was disqualified to sit as a juror in the cause, and so declared. It is claimed that after this it was the duty of the court to proceed with the trial, and submit the questions of fact and law involved in the trial—questions of the very highest importance both to the accused and to the public —to the determination of a tribunal it knew and had found and openly declared to be impure, and to the verdict of a juror whom it knew and had found and openly declared to be disqualified to sit as a juror in the cause. The statement of such a claim would seem to be its sufficient refutation. The Supreme Court of this state has declared what should be done in such a case. In *State* v. *Tuller*, Judge BUTLER, delivering the opinion of the court, says, that the court, upon being advised that a juror had formed and expressed an opinion that the accused was guilty, even though the jury were consulting upon their verdict, "would have sent for the jury and taken the case from them without hesitation."

The offer of the accused, after the court on his motion had found the fact of the juror's disqualification, does not affect the duty of the court. The court is bound to see that justice is duly administered, without reference to the opinions of the accused. To have continued the trial in the face of such a finding would have clashed with the fundamental principles of justice. There can be no rule of law that demands such a result. The language of Justice Foster in the *Kinloch case*

proclaims the real underlying principle of the English law, and with this principle the application of the law to particular cases must conform. He says:—Upon the whole, my opinion is, that all general rules touching the administration of justice must be so understood as to be made consistent with the fundamental principles of justice; and consequently all cases where a strict adherence would clash with those fundamental principles are to be considered as so many exceptions to it."

BEARDSLEY, J.* The facts upon which the questions of law reserved for our consideration in this case arise are contained in the finding of the Superior Court at its August term, 1878, and also the finding of that court at its March term, 1878, upon the motion of the prisoner to be discharged from custody, the allegations of which motion were found to be true, except so far as they were varied by the prior finding referred to.

Those facts are in substance as follows:—At said March term the accused was placed on trial before a jury legally impaneled and sworn, upon an indictment charging him with the crime of murder in the first degree. Each of the jurors before being accepted and sworn was examined in behalf of the state and the accused as to his qualifications as such juror. Upon the second day of the trial, and after witnesses had been examined in behalf of the state, the counsel for the accused stated to the court that they had been informed and believed that one of the jurors in the case was disqualified, for the reason that before being sworn as such juror he had expressed the opinion that the accused was guilty of the crime charged in the indictment, and asked the court to suspend the trial, and hear such witnesses as they were prepared to offer to prove such disqualification. The court suspended the trial, and heard the evidence offered in support of the charge, and thereupon, no evidence being offered by the state, the counsel

* Judges SANFORD and BEARDSLEY of the Superior Court sat in the place of Judges CARPENTER and PARDEE, who had sat upon the trial of the case to the jury.

for the accused claimed that they had established by evidence
the fact that the juror was so disqualified, and asked the
court so to find and declare. Upon such evidence the court
found as a fact that such juror had, before he was sworn,
expressed an opinion that the accused was guilty of the crime
wherewith he was charged, and was thereby disqualified to
sit as a juror upon the trial of the case, and did so declare.
Thereupon the counsel for the accused asked for time in which
to consider what course they would adopt, and the court
granted them until the opening of the court on the next day,
when they offered to waive such disqualification, and proceed
with the trial with such disqualified juror on the panel, or to
accept the verdict of the eleven jurors on the panel exclusive
of such disqualified juror.

The court refused to accept such waiver, or to proceed with
the trial with eleven jurors.

It is claimed by counsel for the accused that these facts
operate as a bar to his further prosecution, and that he is
entitled to be discharged from custody.

In support of this claim they say, first, that the conclusion
of the court that the juror was disqualified was unwarranted
by the facts found, because, consistently with the finding, the
opinion expressed by the juror may have been derived from
such sources, or formed under such circumstances, as not to
disqualify him within the doctrine of the cases referred to by
them, and especially of the case of *The State* v. *Wilson,* 38
Conn. R., 126.

It would be a sufficient answer to this claim that this find-
ing, both as to the facts and the law, was made at the request
of the counsel for the accused. They charged that the juror
was disqualified by reason of having expressed an opinion
that the accused was guilty, and upon the evidence they asked
the court so to find. If the finding was insufficient, they are
not in a position to except to it.

But, aside from this, we have no doubt of the sufficiency of
the finding. It is in the language of the rule of the common
law applicable to challenges for favor, that "the juror having
*declared* an opinion beforehand that the party is guilty, or

will be hanged, or the like, is a ground of challenge," and the rule in this state is the same. *State* v. *Potter*, 18 Conn. R., 184; *State* v. *Tuller*, 34 Conn. R., 294.

In the case of *The State* v. *Wilson*, supra, it was indeed holden that one who had received "impressions" as to the guilt of the accused, merely from hearing or reading reports of a homicide, was not ordinarily disqualified thereby from sitting as a juror upon the trial of such accused person, because his mind would not generally be so affected thereby as to disturb his impartiality as a juror. But this is hardly a departure from the letter of the rule of the common law which we have quoted. Such mental condition, so indefinite and unsettled as presumably not to influence the verdict of a juror, though styled in the case referred to "opinions, impressions or suppositions," scarcely deserves the name of an opinion; but if otherwise, the court sufficiently characterized the opinion in question by finding that it disqualified the juror who expressed it.

The juror in this case being thus disqualified, and the jury being discharged for that cause, was the accused thereby exempted from liability to further prosecution? In determining this question we have no occasion to enter upon the discussion of what constitutes "jeopardy of life," or generally what exigency arising in the course of a capital trial will authorize the discharge of the jury, nor to review the numerous cases bearing upon these questions which have been referred to by counsel, because we think that the court was justified in its action by the well-settled law of this state, as laid down in the case of *State* v. *Tuller*, before referred to. In that case there was a motion in arrest of judgment, upon the ground that a juror had before the trial expressed an opinion that the accused was guilty. The court refused to arrest the judgment, upon the ground that the fact of the expression of such opinion was known to counsel of the accused before the verdict, and they did not then inform the court of it, holding that by such omission they had waived what they sought to obtain by their motion in arrest, namely, a new trial before another jury, because the court would, if so informed and requested to do so, have discharged the jury

before verdict. Judge BUTLER, in giving the opinion of the court says:—"The law is well settled that if a juror has formed and expressed an opinion that the prisoner is guilty of the crime charged prior to the trial, and that fact is unknown to the prisoner or his counsel until after verdict, the fact is good ground for arresting the judgment. That doctrine was recognized by this court in *Smith* v. *Ward,* 2 Root, 302, and by Judge Swift in the second volume of his Digest, page 415." And again—"If he (the accused) knows of an objection to the panel before the verdict is rendered, and in time to prevent the verdict and obtain a rehearing before another jury, and does not avail himself of the opportunity, he must be holden to a waiver of the objection; otherwise he would be permitted to lie by and speculate upon the chances of a verdict, and this cannot be tolerated." Upon the principles which governed the decision in that case the discharge of the jury was clearly warranted, if made at the request of the accused. The record shows that in effect it was so made.

We are to assume, as the court below must have assumed, that counsel in charging that the juror was disqualified, and moving the court to a trial of such charge, had a legitimate purpose in view, and the only object of that trial which we can recognize was the exclusion of the juror from the panel, if the court found that the charge was sustained by the evidence. Their request to the court after they had introduced their evidence, made presumably in the presence of the accused and with his acquiescence, to find and declare that the juror was disqualified, was in effect a motion to discharge the juror for that cause, and when the court did so find and declare, that declaration was in effect the fiat of the court that the juror should no longer sit upon the trial of the case. No other finding or declaration was required in order to sever his connection with the panel, and indeed any other would have been superfluous. By the operation of that finding and its announcement he ceased to be a juror, and the number of jurors on the panel was reduced to eleven.

In this state of the case counsel for the accused offered to waive the disqualification of the juror, and proceed with the trial with him as one of the panel.

The offer was too late. The court could not then be required to reinstate the discharged juror upon the panel. If they had any discretionary power to do so, they acted wisely in refusing to exercise it. A person situated as this juror would have been if restored to the panel, should not sit upon the trial of a capital case. His mind would almost necessarily be so preoccupied with a sense of his own situation, that a calm and disinterested consideration of the case could hardly be expected from him. He would regard himself as well as the accused as on trial, and his verdict would be quite as likely to be shaped by personal considerations and a desire to vindicate himself, as by the evidence and the law in the case.

Nothing remained for the court but to discharge the jury. The offer of the counsel for the accused to proceed with the trial with eleven jurors was not, so far as the record discloses, accepted by the state, and without such consent at least, eleven jurors could not have rendered a good verdict. Whether with such consent a good verdict could have been rendered in a capital case by less than a full panel, is a question which we are not called upon to decide.

The Superior Court is advised to dismiss the motion to discharge the accused from custody.

In this opinion the other judges concurred.