STATE OF CONNECTICUT *v.* WILLIAM STANKEVICIUS

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 5-17543

Argued January 3—decided May 6, 1966

*Joseph Asbel,* of Hartford, with whom, on the brief, was *Jeffrey M. Mines,* of Hartford, for the appellant (defendant).

*Joseph H. Sylvester,* assistant prosecuting attorney, with whom, on the brief, was *George J. Yudkin,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J. On January 20, 1965, the defendant was issued a summons for speeding, in violation of

§ 14-219 of the General Statutes, returnable February 15, 1965. On that date the case was continued to March 2, 1965, when the defendant entered a plea of not guilty. Trial before a jury upon a substituted information charging the defendant with the crime of operating a motor vehicle at a speed greater than the statutory speed limit in violation of § 14-219 (a) (2) of the General Statutes commenced on March 23, 1965.

During the cross-examination by the defendant's counsel of the state's first witness, the following transpired: "Q.—Trooper Rasmussen, do you know whether or not there has been some discussion among the state police concerning the possibility of error in radar equipment? A.—Yes, sir. Q.—And do you know whether or not there are state police in disagreement with you? The court: Just a minute, now! I'm going to excuse the jury at this point. The jury is excused. (Whereupon the jury were removed from the courtroom and the following took place in the absence of the jury.) The court: I don't follow your line of examination, counselor; and frankly I think it is highly prejudicial at this point; and the court is almost inclined to declare a mistrial, and the court so declares. It is a mistrial. Short recess."

Such is the extent of the pertinent part of the record of the first trial. Although there is no finding, both the counsel for the appellant and the counsel for the appellee at the oral argument of this appeal agreed in statements to this court that immediately on declaring a mistrial the judge declared a recess and at once left the bench, giving counsel no opportunity to be heard; that both counsel were taken by surprise by the sudden action of the judge; that counsel for the appellant had no chance to object; and that in chambers immediately thereafter

he did protest and object to the declaration of the mistrial. In view of the importance of the question before us, involving as it does the claim of double jeopardy, we have decided to take the case as presented by the parties. *Phillips* v. *Moeller*, 147 Conn. 482, 484.

Thereafter, on September 15, 1965, before a different trial judge, the defendant moved for his discharge, claiming that the first trial judge had abused his discretion in declaring a mistrial and that by a retrial the defendant would be subjected to double jeopardy. Upon the denial of this motion the defendant was then and there ready to proceed to trial, but the state was not ready because of the unavailability of its witnesses, even though subpoenas for them had been issued. The defendant's motion to dismiss for lack of a speedy trial was denied, and the defendant was brought to trial on September 21, 1965, and convicted.

On this appeal, the defendant has assigned four errors: (1) The declaration of a mistrial; (2) the denial of the motion to dismiss because of abuse of discretion in declaring a mistrial; (3) the denial of the motion to dismiss because of double jeopardy; and (4) the denial of the motion to dismiss because of lack of a speedy trial.

The crucial question, determinative of this appeal, is whether the trial judge at the first trial (not the same judge as the one who presided at the second trial) erred in declaring a mistrial. While under the rules of the ancient common law where a jury had been impaneled in a criminal case a declaration of a mistrial and the discharge of the jury before verdict operated as a bar to a further trial of the defendant for the same offense under the doctrine of double jeopardy and worked for all practical purposes an acquittal of the defendant, the present rule, ex-

pressed in varying language in judicial decisions, vests in the trial court the authority to discharge a jury, in the exercise of a sound discretion and not arbitrarily, without working an acquittal of the defendant, but only where there is urgent necessity or a compelling reason or when failure so to do would defeat the ends of justice. See such cases as *Gori* v. *United States,* 367 U.S. 364, 369; *Brock* v. *North Carolina,* 344 U.S. 424, 427; *Wade* v. *Hunter,* 336 U.S. 684, 689; *State* v. *Williamson,* 134 Conn. 203, 204; *State* v. *Allen,* 46 Conn. 531, 539, 541-43. These basic principles, upon which courts throughout the United States have relied, have been comprehensively stated by Justice Story in *United States* v. *Perez,* 9 Wheat. (22 U.S.) 579, 580, as follows: "We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." The circumstances which of necessity or in the interest of the furtherance of justice may justify the exercise of the court's discretion in declaring a mistrial are many and various; no general rule can "govern the discretion of the court, in all possible cases and circumstances." *People* v.

*Olcott,* 2 Johns. Cas. 301, 306 (N.Y.), quoted in *State* v. *Woodruff,* 2 Day 504, 512; see *State* v. *Allen,* supra; *State* v. *Masse,* 24 Conn. Sup. 45, 48, 1 Conn. Cir. Ct. 381, 384.

In the light of the foregoing principles of law, did the trial court at the first trial, under the existing circumstances of the case, exercise a sound discretion in declaring a mistrial? We are of the opinion that it did not. From the record before us, it would appear that the court considered the line of questioning of the state's witness by the defendant on cross-examination as prejudicial. There was no objection by the state to this line of questioning and no motion by the state for a mistrial. The court acted sua sponte. Whether, if made, an objection to the questions might have been sustained is no concern, since no objection was made. We do not see any compelling reason or urgent necessity or furtherance of the ends of justice in the declaration of a mistrial. We consider the action of the trial court an abuse of its discretion.

The effect of an improper discharge of the jury is to acquit the defendant of the crime as to which the jury might have rendered a verdict if a mistrial had not been declared. The defendant was entitled, the jury having been impaneled and the trial thereby commenced, to a verdict, be it one of conviction or of acquittal, subject of course to the possibility of a mistrial if circumstances which might arise would justify the proper exercise of the court's discretion. Wharton, Criminal Law and Procedure § 141, and cases cited; see *State* v. *Garvey,* 42 Conn. 232, 233. "That no one . . . shall be put in jeopardy twice for the same offence, is a universal maxim . . . thought worthy to be incorporated, to a certain extent, into the constitution of the *United States.* And that an acquittal or conviction, by a court having jurisdiction, on a sufficient indictment or infor-

mation, is, in all cases whatsoever, a bar, is equally clear." *State* v. *Benham,* 7 Conn. 414, 418; see *State* v. *Vincent,* 25 Conn. Sup. 96, 100; *Armentrout* v. *State,* 214 Ind. 273, 278; *State* v. *Sanborn,* 157 Me. 424, 446.

It remains for us to consider the question whether the defendant in the case before us, by failing to object, waived his right to have the trial proceed to a verdict, with the result that double jeopardy would not attach. Such a right is a personal privilege and may be waived, expressly or impliedly, by the accused. *State* v. *White,* 71 Kan. 356, 360; *Ballensky* v. *People,* 116 Colo. 34, 36. While there are cases to the contrary, the weight of authority is to the effect that the failure of the defendant to object to or to protest the court's discharge of the jury is not a waiver of a plea of former jeopardy. "To constitute a waiver upon the part of the accused, it must appear there was the intentional relinquishment of a known right." *State* v. *Vincent,* supra, 102. "The mere silence of an accused or his failure to object or to protest a discharge of the jury cannot amount to a waiver of this immunity." *Himmelfarb* v. *United States,* 175 F.2d 924, 931 n., cert. denied, 338 U.S. 860; see *People* v. *Arnett,* 129 Cal. 306, 308; *Mullins* v. *Commonwealth,* 258 Ky. 529, 536; *Robinson* v. *Commonwealth,* 88 Ky. 386, 391; *People ex rel. Stabile* v. *Warden,* 139 App. Div. 488, 494, aff'd, 202 N.Y. 138. Under the circumstances of this case we find that there was no waiver.

The defendant having been placed in former jeopardy and there being no waiver, the court below should have granted his motion to dismiss. It is unnecessary to consider the defendant's further claims of error.

There is error, the judgment is set aside and the case is remanded with direction to render judg-

ment that the defendant is not guilty and ordering that he be discharged.

In this opinion DEARINGTON and JACOBS, Js., concurred.