### STATE OF CONNECTICUT *v.* MARY CARRIONE
### (10392)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued October 12—decision released December 21, 1982

*Edward R. Karazin, Jr.,* with whom were *Edward B. Morley* and, on the brief, *Leonard A. Schine,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen H. Solomson,* assistant state's attorney, for the appellee (state).

SHEA, J. A jury found the defendant guilty of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2) and § 53a-119. She has appealed from the judgment of conviction raising numerous claims of error, many of which lack substantial merit. The issues which warrant full discussion are (1) whether the trial court adequately instructed the jury to draw no inference from the failure of the defendant to testify; (2) whether the court should have charged that an unfavorable inference could be drawn against the state from the failure to produce certain witnesses; (3) whether there was misconduct on the part of the prosecutor in asking questions which previous rul-

ings of the trial court were intended to exclude; and (4) whether the extended delay between the criminal act alleged in the information and the institution of the prosecution required a dismissal. We find no error.

The larceny of which the defendant was convicted involved a scheme in which she induced several of her relatives and friends to give her substantial sums of money to be invested in undisclosed ventures, which she represented would provide extremely high returns in a few months. In one instance the defendant paid to a victim $1000 as the income for a period of less than three months upon a $3000 investment. These marvelous returns, of course, induced that victim and others like her to invest additional funds with the defendant, most of which were never accounted for and disappeared. No further review of the evidence is necessary because the defendant conceded during oral argument that if the jury believed the testimony of the witnesses for the state, particularly that of Louis Argenio, they might reasonably have come to their conclusion of guilt. We find no merit, therefore, in her claim that the evidence was insufficient to support the verdict.

I

In *State* v. *Burke,* 182 Conn. 330, 438 A.2d 93 (1980), this court held that it was plain error for a trial judge not to comply with the mandate of General Statutes § 54-84 (b) to "instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify," unless the accused requests otherwise. Id., 333. More recently the Supreme Court of the United States has held that a defendant has a constitutional right to such an

instruction when he so requests. *Carter* v. *Kentucky*, 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981).

The defendant, who filed a request for an instruction upon the effect of her failure to testify,[1] claims that the language used by the court to instruct the jury on this subject deviated substantially from that required.[2] The court charged that the jurors were "to draw no legal impressions from the fact that [the defendant] did not take the stand and testify" and they were "not to penalize her for not testifying and taking advantage of her constitutional right."

The defendant's right to an instruction that no unfavorable inference shall be drawn from her failure to testify, because the defendant requested such a charge, rests upon the constitution and not merely

---

[1] The defendant requested the following charge: "1. The accused has not testified in this case. 2. An accused person is under no obligation to become a witness in his own behalf. Under our law, an accused person may either testify or not as he sees fit. It is for the State to prove him guilty and no burden rests upon him to prove his innocence. 3. There may be many good and sufficient reasons why the Defendant has not testified (advice of counsel, etc). *No inference or taint should be derived from such failure to testify.*" (Emphasis added.)

[2] The portion of the charge dealing with the failure of the defendant to testify was as follows:

"Now, the defendant did not choose to take the stand in her own behalf. I must state to you that this is an absolute constitutional right that she has to choose to take the stand or not. You are to *draw no legal impressions* from the fact that she did not take the stand and testify. That is a right that a person has.

"When we started this case, during the voir dire or questioning phase of you people as prospective jurors, you did hear it said that the burden of proof was upon the State of Connecticut and that it never shifted; you heard the defendant accused need prove nothing. If it were her choice, and it is her choice in this case not to testify, you are not to *penalize* her for not testifying and taking advantage of her constitutional right." (Emphasis added.)

upon our statute. *Carter* v. *Kentucky,* supra, 305. An instruction concerning "legal impressions" does not adequately respond to this constitutional entitlement. The substitution of "legal impression" for "legal inference" is erroneous because the term "legal impression," unknown to the law, may well be understood by the jury to encompass not only beliefs that are the product of logical deduction but also less precise mental inclinations arising from psychological or emotional factors. Although the defendant's request to charge asked generally that "no inference or taint" be drawn, and did not expressly invoke the language of § 54-84 (b), that request did not invite the court to substitute an instruction about "legal impressions" for an instruction on "legal inferences."[3]

We conclude nonetheless that this error does not warrant reversal of the defendant's conviction. An erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury were misled. *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982). In this case, after the unfortunate reference to "legal impressions," the court went on to explain, concretely and unambiguously, the defendant's constitutional right not to testify in her own behalf. Emphasizing that the choice about testifying belonged to the defendant, the court expressly instructed the jury "not to penalize her for not testifying and taking advantage

---

[3] We note that when the instructions were given, the defendant took no exception in this regard. We have, however, held that failure to except to the charge required by General Statutes § 54-84 (b) does not preclude review on appeal. *State* v. *Burke,* 182 Conn. 330, 331-32, 438 A.2d 93 (1980). Neither is an exception necessary if the court fails to charge the substance of the requested charge. Practice Book § 854.

of her constitutional right." In substance, this instruction conveyed to the jury precisely that which the customary instruction about "legal inferences" is intended to communicate. It served, therefore, to make the earlier use of erroneous language harmless.

## II

The defendant claims that she was entitled to a charge that an unfavorable inference should be drawn against the state for its failure to furnish the testimony of two prospective witnesses. "The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928). "There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce." *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960).

The defendant's request to charge[4] did not specify which persons the state should have called as witnesses except by a general reference to the information. In excepting to the charge, however, she did mention the failure of the prosecutor "to call two of the named complainants in the information . . . ." On appeal the defendant claims that she was entitled to receive a missing witness charge

[4] The defendant requested the following charge: "The failure of the State to call witnesses who were within its power to produce and were named in the State's information, and who had direct contact with the Defendant, gives the Jury the right to infer that the testimony of such witnesses would be unfavorable to the State's theory of the case." This requested charge was omitted from the printed record but was included in the defendant's brief.

with respect to Debbie Belward and Carmella Gilberti, two of the eight persons named in the information as victims of larceny.

Debbie Belward was the wife of William Belward, who was also named in the information as a victim and who did testify at the trial. His testimony indicated that the source of the funds which he gave the defendant was his own bank account. Although there is some ambiguity in his use of the first person plural at some points in his testimony in referring to the ownership of the "investment," he did testify on cross-examination that it belonged to him exclusively. At some point in the transaction it appears that his investment was combined with that of his mother-in-law, Gloria Cook, who also testified as a victim concerning funds which she had given to the defendant. It appears that his wife, Debbie Belward, was present when the initial conversation with the defendant about investing the money took place, but she did not observe the funds being delivered to the defendant. Nor does it appear that she attended or participated in any of the subsequent meetings with the defendant related to this investment. The affidavit attached to the bench warrant indicates that the police incorrectly assumed that the funds for the investment made by William Belward came from a bank account which he and his wife owned jointly. This circumstance may explain Debbie Belward's being named as a victim in the information, which is the sole basis for the defendant's claim that she was a witness whom the state would naturally have produced.

The other person named as a victim in the information who did not testify, Carmella Gilberti, was the mother of Natalie Gilberti, who resided with her and did appear at the trial as a witness. Natalie

Gilberti testified that she gave the defendant $3000 of her own funds and $3000 from her mother's savings account to be treated as one investment. Her mother and her sister, the witness Gloria Cook, were present at this meeting with the defendant. Carmella Gilberti may have been in the house, but may not have been in the room, about two months later when the defendant returned $1000 in bills as a return on the investment made by her and her daughter. The investment of this sum with the defendant together with an additional $2000 in behalf of Carmella Gilberti was handled entirely by Natalie Gilberti.

Our review of the transcript indicates that the only significant events of which Debbie Belward and Carmella Gilberti may have had first hand knowledge were the initial conversations between the defendant and the witness William Belward in one instance and the witness Natalie Gilberti in the other. The witness Gloria Cook also testified briefly about both of these occasions. It appears that the testimony of these witnesses would have been cumulative at best. The fact that one is named as a larceny victim does not necessarily establish that he would be able to furnish evidence of sufficient importance at a trial to warrant an inference against the state for failure to produce him. "To charge the jury on the rule, the party claiming the benefit of the rule must show that he is entitled to it." *Doran* v. *Wolk,* 170 Conn. 226, 229, 365 A.2d 1190 (1976). "A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without anticipation that an inference may be invoked." *State* v. *Brown,* 169

Conn. 692, 705, 364 A.2d 186 (1975); 2 Wigmore, Evidence (3d Ed.) § 287. We conclude that the defendant has not demonstrated that she was entitled to the requested charge.

## III

The defendant has charged the state with prosecutorial misconduct by virtue of its questioning several witnesses about transactions with the defendant which occurred after the terminal date[5] alleged in the substitute information. The trial court excluded such inquiries as going beyond the scope of the charge and the defendant claims no error in these rulings. On appeal the defendant claims that, despite the favorable rulings on her objections, the questions asked by the prosecutor, even if they went unanswered, were designed to bring before the jury criminal acts other than those charged and that she was unduly prejudiced as a result. In essence, the defendant now seeks the mistrial for which she made no motion in the trial court. Implicitly she claims error in the failure of the court to declare a mistrial sua sponte. Such action, in the absence of the defendant's consent or of manifest necessity, would present a serious question of whether the defendant would then be entitled to an acquittal by virtue of a double jeopardy claim. See *Harris* v. *Young,* 607 F.2d 1081, 1086, (4th Cir. 1979), cert. denied sub nom. *Mitchell* v. *Harris,* 444 U.S. 1025, 100 S. Ct. 688, 62 L. Ed. 2d 659 (1980); *State* v. *Stankevicius,* 3 Conn. Cir. Ct. 580, 584-85, 222 A.2d 356 (1966).

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the

---

[5] The substitute information alleged that the larceny was committed in Norwalk and Stamford "between July of 1975 and September of 1976."

trial or arose subsequent to the trial . . . ." Practice Book § 3063. The defendant contends, however, that the conduct of the prosecutor so seriously prejudiced her that she was deprived of a fair trial in violation of her right to due process of law. Since prosecutorial misconduct may implicate due process; see *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); we are obliged to review the trial court proceedings to determine whether there is any merit to such a claim. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

We have carefully examined the several transcript references in the defendant's brief relied upon to support this claim as we are wont to do where an accusation of prosecutorial misconduct is made. See *State* v. *Cosgrove,* 186 Conn. 476, 484–89, 442 A.2d 1320 (1982). Before testimony began the state was permitted to amend the original information, which alleged the commission of the crime of larceny in the first degree between July, 1975 and August, 1976, by changing the latter date to September, 1976. The witness Louis Argenio testified that he had, starting on December 2, 1975, given sums of money to his brother to be invested with the defendant which totalled $32,000 by August 16, 1976. He was then asked about any later investments and he replied that on September 9, 1976, he had given the defendant another $25,000 when she was at the home of his brother. After the witness identified the defendant in the courtroom, the defendant then moved to strike the testimony concerning the September incident because it related to the commission of another crime outside the dates set forth in the amended information. The court granted the motion and instructed the jury

to disregard this testimony. The state requested argument on the ruling and the jury were excused. The state argued that evidence of other transactions with the defendant later than the dates given in the information should be permitted because these events had probative value in establishing the earlier crimes. See *State* v. *Nardini,* 187 Conn. 513, 519, 447 A.2d 396 (1982). The trial court persisted in the original ruling excluding such testimony on the ground that it would be confusing to the jury and unduly prejudicial because of similarity of the uncharged acts to those included within the time frame of the information. The ruling, however, was limited expressly to the evidence of the delivery of money to the defendant on September 9, 1976.

Another witness, Gloria Cook, in response to a question of the prosecutor which was clearly confined to the period within the information, began to volunteer some testimony about "[a]fter September," but was cut-off immediately by the defendant's objections, which the court sustained. William Belward testified that in September or October of 1976 the defendant had asked him for the additional sum of $27,000. The trial court granted the motion of the defendant to strike this testimony. The state requested that the jury be excused and, after they left the courtroom, offered to prove that the defendant requested the $27,000 in order to pay off three detectives who had discovered the missing money and that the defendant had advanced this and other excuses for her inability to return the invested funds. The court refused to change its ruling which excluded such testimony.

An additional instance of prejudice cited by the defendant relates to the testimony of Natalie Gilberti. Her response to a question asked by the

court about reinvesting a $2000 interest payment with the defendant prior to September, 1976, was that "it was not invested prior," leaving the implication that there was such a transaction with the defendant after that date. She also testified about some checks given by the defendant as repayments to her in December, 1976, which the court excluded for lack of proper authentication.

It is apparent from this review that the allegation of prosecutorial misconduct is wholly groundless. Indeed, the prosecutor seems to have exhibited more than the ordinary degree of care in requesting the jury to be excused when questions of evidence were to be argued and in framing his questions to comply with the court's ruling. The responses of some of the witnesses which may have transgressed the court's ruling do not appear to have been solicited by the prosecutor, some of them having been occasioned by questions of the trial judge. Furthermore, the testimony about later transactions with the defendant might well have been admitted by the trial court to show a common scheme to defraud the victims by inducing them to reinvest the returns she paid them along with additional sums of money. *State* v. *Nardini,* supra, 519. This evidence was highly relevant to prove the existence of a larcenous intent at the time when she received the initial investments from these victims which fell within the dates alleged in the information. The ruling of the trial court seems to have been intended to exclude only evidence of additional investments by these victims rather than the reinvestments of the interest payments on their original investments. This exercise of discretion rested well within the authority of the trial court to restrict the use of cumulative evidence and to balance its probative

value against its prejudicial tendency. Id., 520; *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982). Inasmuch as we would not be inclined to find error if the trial court had exercised its discretion differently and had allowed the evidence complained of to come into the case, we can hardly find undue prejudice in the unsolicited responses of a few witnesses which went beyond the scope of its discretionary ruling. A fortiori, we find no such degree of prejudice as would amount to the deprivation of a fair trial. See *State* v. *Evans*, 165 Conn. 61, 70–73, 327 A.2d 576 (1973).

## IV

The defendant claims that the delay of one and one-half years from completion of the initial investigation of the case by the office of the state's attorney until the arrest was unreasonable and required dismissal of the information. The trial court considered this ground for dismissal, but found that the delay was not purposeful and that it was probably necessary because of the complexity of the case. It also concluded that the defendant had failed to demonstrate any actual prejudice resulting from the delay.

The sixth amendment guaranty of a speedy trial does not apply to the time which elapses before a criminal proceeding is commenced by arrest or accusation. *United States* v. *MacDonald*, 456 U.S. 1, 6, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982); *United States* v. *Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971); see *State* v. *L'Heureux*, 166 Conn. 312, 318, 348 A.2d 578 (1974). The statutes of limitation are ordinarily the only protection afforded to a defendant against the institution of stale criminal charges. *United States* v. *Marion*, supra, 322. The due process clause, however,

becomes implicated where substantial prejudice from such delay has resulted and the delay was for the purpose of gaining a tactical advantage over an accused. Id., 324. Delay occasioned by a desire to make a thorough investigation before commencing a prosecution has not been regarded as tactically motivated and has been approved. *United States* v. *Lovasco*, 431 U.S. 783, 795, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977). The circumstances in which preaccusation delay would necessitate dismissal of a charge have not been precisely delineated, but inquiry is required into the reasons for the delay and the degree of prejudice which has resulted. Id., 796–97; *United States* v. *Marion,* supra, 324.

Although there is no satisfactory explanation for the delay of more than one and one-half years from the date of the information obtained by the police until the arrest, there is no suggestion of any attempt by the state to gain a tactical advantage. The inspector who first handled this investigation of the complaints of seventeen victims retired a little more than one year after the first complaints about the defendant were received. Another inspector completed the investigation and the prosecution was instituted about six months later.

The defendant has failed to show that any actual prejudice has been caused by the delay. In her brief she relies upon the death of two witnesses, her son and her mother-in-law, "with whom the defendant spent much of her time during the period in question and whose severe illness during the period in question serves to explain much of the defendant's actions." We can only conjecture how the illness of these possible witnesses could constitute a defense to the criminal charges against the defendant. There is no indication in the record that they

were present when any of the transactions with the larceny victims took place. We agree with the conclusion of the trial court that the defendant has failed to demonstrate any actual prejudice from the delay and that her motion to dismiss should be denied.

# V

The remainder of the errors claimed by the defendant may be treated briefly.

The numerous rulings on evidence which are challenged were well within the discretionary authority of a trial judge to determine the relevance of the evidence and involved no prejudice to the defendant. *State* v. *Periere,* 186 Conn. 599, 607–608, 442 A.2d 1345 (1982).

The tardy disclosure of letters written by one of the state's witnesses to the Stamford chief of police and to the governor was not deliberate. The prosecutor made them known as soon as he discovered them in the police file. The defendant chose not to avail herself of the opportunity to recall the witness for further cross-examination regarding the contents of the letters. See *State* v. *Cosgrove,* 186 Conn. 476, 488, 442 A.2d 1320 (1982). Another witness, who testified that she had given statements to the police which had not been produced, was referring to her oral conversations with the police. See Practice Book §§ 748, 752. The prosecutor, who had requested the police to furnish any records or notes of the interviews, appears to have done all that was reasonably possible in this situation.

The right of the state to a closing argument is provided by the rules of practice. Practice Book § 874(4). No authority is cited by the defendant to support her claim that this practice deprived her of a fair trial.

The trial court properly denied the defendant's request to charge the jury that if the victims "gave said money to the defendant by their own consent, then you must find the defendant not guilty." Such an instruction would have been quite misleading in this case where the charge of larceny is based upon fraud or embezzlement. See General Statutes § 53a-119 (1), (2) and (3). With respect to another error claimed in the charge, which was not even made the subject of an exception, the court was correct in using the disjunctive in the phrase "intent to deprive another of property or to appropriate the same." General Statutes § 53a-119. The use of the conjunctive in the information was in conformance with approved practice and did not impose on the state any greater burden than that required by the statute for a conviction. 41 Am. Jur. 2d, Indictments and Informations § 214. Another deficiency claimed in the instructions concerning innocent participation in a crime was corrected by the trial court to the apparent satisfaction of the defendant, since no further exception was taken to the additional instruction.

It does appear that when some checks had been admitted as exhibits the court had excluded the bank markings on the reverse side of them for lack of proper authentication. The checks were handed to the jury along with other exhibits for use in their deliberations with the excluded markings uncovered. Counsel for the defendant and the state inspected these documents before they were handed to the jury. We are not convinced that the possibility that the jury may have seen those bank markings on the checks was sufficiently prejudicial as to warrant a new trial.

We agree with the rulings of the trial court denying the defendant's motions to dismiss because of the failure to include exculpatory information in the affidavit supporting the arrest warrant application. The affidavit adequately supported a finding of probable cause.

There is no error.

In this opinion the other judges concurred.