STATE OF CONNECTICUT *v.* JAMES R. DUDLA
(8620)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, JS.

Argued January 4—decision released May 3, 1983

1

*Bruce L. Levin,* with whom, on the brief, was *Stephen G. Friedler,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John T. Redway,* assistant state's attorney, for the appellee (state).

SPEZIALE, C. J. The defendant, James R. Dudla, was charged by information with the crime of carrying a pistol without a permit in violation of General Statutes § 29-35.[1] After a trial to a jury, the defendant was found guilty as charged on March 30, 1977. The defendant filed a motion to set aside the verdict, claiming, inter alia, error in the trial court's refusal to instruct the jury that "no presumption of guilt may be raised, and no unfavorable inference may be drawn from the fact that a defendant does not see fit to testify." The trial court

---

[1] "[General Statutes (Rev. to 1977) ] Sec. 29-35. CARRYING OF PISTOL OR REVOLVER WITHOUT PERMIT RESTRICTED. No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this section shall not apply to the carrying of any pistol or revolver by any marshal, sheriff, parole officer or peace officer, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States."

denied the motion, and from the judgment of guilty the defendant appealed to this court. We agree with this claim of the defendant.

While the defendant's appeal was pending, the United States Supreme Court on March 9, 1981, decided *Carter* v. *Kentucky,* 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), holding that the fifth amendment privilege against self-incrimination requires a state trial court, upon request by the defendant, to caution the jury that no inference may be drawn from an accused's failure to testify.

## I

It is uncontested that the trial court in this case refused to give a "no inference charge" which was requested by the defendant.[2] *Carter* v. *Kentucky,* supra, had not yet been decided, however, when the defendant was tried. We therefore must decide whether, and to what extent, that decision should be applied retroactively.[3]

---

[2] The defendant's request to charge, number 13:

"13. DEFENDANT'S FAILURE TO TAKE STAND:

"The law does not compel a defendant to take the witness stand and testify, and no presumption of guilt may be raised, and no unfavorable inference may be drawn from the fact that a defendant does not see fit to testify.

"You must not permit such a fact to weigh in the slightest degree against the defendant, nor should it enter into your discussions or deliberations. The defendant is not required to establish his innocence; he need not produce any evidence whatever if he does not choose to do so.

"As I have indicated, the burden is on the State to prove the defendant guilty beyond a reasonable doubt; if it fails, the defendant has the right to rely on that failure and of right must be acquitted."

[3] In *State* v. *Carrione,* 188 Conn. 681, 684–85, 453 A.2d 1137 (1982), we implicitly assumed that *Carter* v. *Kentucky,* 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), applied retroactively. In that case, however, the defendant's challenge to the court's "no inference" instruction was primarily based on the language of General Statutes § 54-84 (b); see footnote 6, infra; which predated both *Carter* and the trial in *State* v. *Carrione,* supra. The retroactivity of *Carter* v. *Kentucky* was neither briefed nor argued in *Carrione.*

The decision in *Carter* v. *Kentucky,* supra, answered the constitutional question "specifically anticipated and reserved . . . in *Griffin* v. *California,* 380 U.S. 609, 615 n.6, [85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965) ] . . . ." *Carter* v. *Kentucky,* supra, 295. In *Griffin* v. *California,* supra, 615, the United States Supreme Court held that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt," but did not rule on whether a "no inference" instruction must be given at the defendant's request. It is clear, however, that the constitutional basis of *Carter* is the same as that of *Griffin.* "The penalty was exacted in *Griffin* by adverse comment on the defendant's silence; the penalty may be just as severe when there is no adverse comment, but when the jury is left to roam at large with only its untutored instincts to guide it, to draw from the defendant's silence broad inferences of guilt. . . . [T]he members of a jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence." *Carter* v. *Kentucky,* supra, 301. Because the two cases are based on the same constitutional provision—the fifth amendment guarantee against compulsory self-incrimination—the question of their retrospective application should be resolved in the same way.

We applied the *Griffin* rule to a trio of cases in which appeals were pending at the time *Griffin* was announced, in accordance with the decision of the United States Supreme Court in *O'Connor* v. *Ohio,* 382 U.S. 286, 86 S. Ct. 445, 15 L. Ed. 2d 337 (1965). See *State* v. *Annunziato,* 154 Conn. 41, 44, 221 A.2d 57 (1966); *State* v. *Vars,* 154 Conn. 255, 270, 224 A.2d 744 (1966); *State* v. *Wilkas,* 154 Conn. 407, 409–10, 225

A.2d 821 (1967). Those decisions were based largely on *Tehan* v. *Shott,* 382 U.S. 406, 86 S. Ct. 459, 15 L. Ed. 2d 453, reh. denied, 383 U.S. 931, 86 S. Ct. 925, 15 L. Ed. 2d 850 (1966). In *State* v. *Annunziato,* supra, 44, we stated: "[*Tehan* v. *Shott*] held that the *Griffin* rule does not require retrospective application to cases where '[a]ll avenues of direct review of the . . . [defendant's] conviction . . . [had been] fully foreclosed . . . before . . . [the] decision in . . . *Griffin* v. *California,* supra.' [*Tehan* v. *Shott,* supra,] 408. In the instant case, of course, the appeal of the defendant has just been argued, so that his case does not fall within the quoted rule of the *Tehan* case. In footnote 3 of the *Tehan* case (p. 409), it is stated that there is no 'question of the applicability of the *Griffin* rule to cases still pending on direct review at the time it was announced. Cf. *O'Connor* v. *Ohio,* [supra].' " We therefore applied the *Griffin* rule in reversing the defendant's conviction.

We see no reason to treat the retroactivity of *Carter* v. *Kentucky,* supra, differently than we did that of *Griffin* v. *California,* supra. The same constitutional rights and similar considerations of judicial economy are present in each case. See *Linkletter* v. *Walker,* 381 U.S. 618, 636–37, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965). We therefore hold that the rule of *Carter* v. *Kentucky,* supra, is to be applied to all convictions that were not yet final[4] at the time the decision was rendered.[5]

---

[4] A judgment is considered final for these purposes when all avenues of direct appeal have been exhausted or when the time for filing a direct appeal has passed. See *Tehan* v. *Shott,* 382 U.S. 406, 409 n.3, 86 S. Ct. 459, 15 L. Ed. 2d 453 (1966).

[5] The United States Supreme Court has indicated that this treatment of *Carter* v. *Kentucky,* 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), is correct. In a memorandum decision *Mack* v. *Oklahoma,* 459 U.S. 900, 103 S. Ct. 201, 74 L. Ed. 2d 161 (1982), the court vacated the judgment in *Mack* v. *State,* 641 P.2d 1122 (Okla. Crim. App. 1982) and remanded to the state court for further consideration "in light of *United States* v. *Johnson,*

Therefore, it was error for the trial court to refuse the requested "no inference" instruction.[6]

## II

Our conclusion that there was error does not, however, necessarily mandate reversal. The state urges that the evidence of guilt was ample to support a conviction and that "any error in these proceedings was harmless beyond a reasonable doubt." The principal evidence presented by the state was the testimony of state police officer Douglas Hanahan, who testified as follows. On October 9, 1975, at about 9 p.m., he observed the defendant illegally operating a motorcycle on route 15 in Orange. When Hanahan activated his lights and siren, the defendant did not stop immediately, but eventually pulled off the highway at a dark,

457 U.S. 537 [102 S. Ct. 2579, 73 L. Ed. 2d 202] (1982)." *Mack* v. *State* is the only case we have found which denied any retroactive effect to *Carter* v. *Kentucky,* supra, in all cases. In *United States* v. *Johnson,* supra, 562, the Supreme Court held that "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." The clear implication of the remand in *Mack* is that the court expects similar retroactivity to be allowed in Fifth Amendment cases.

States other than Oklahoma have applied *Carter* retroactively to cases pending on appeal when *Carter* was announced. *People* v. *Crawford,* 632 P.2d 626 (Colo. App. 1981); *Mosley* v. *State,* 402 So. 2d 559 (Fla. Dist. Ct. App. 1981); *Parker* v. *State,* 425 N.E.2d 628 (Ind. 1981); *Richardson* v. *State,* 402 So. 2d 848 (Miss. 1981); *Franklin* v. *State,* 646 P.2d 543 (Nev. 1982); *Brown* v. *State,* 617 S.W.2d 234 (Tex. Crim. App. 1981).

[6] The defendant also claims that General Statutes § 54-84 (b) should be applied retrospectively to this case, which was pending on appeal when the statute became effective on October 1, 1977. Section 54-84 (b) states: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

In view of our holding today that *Carter* v. *Kentucky,* 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), is to be applied retrospectively to cases pending on appeal when it was decided, we need not address the defendant's statutory claim.

grassy area. The defendant then reached into his jacket and removed a dark object. Hanahan feared the object was a gun, and ordered the defendant to drop it. The defendant threw the object down near where he was standing. After backup officers arrived, Hanahan searched the area where the object had been dropped, and found a .38 calibre revolver, which was later found to be operable and loaded.

Hanahan's testimony is the only evidence offered to link the defendant to the weapon, the possession of which is the basis of his conviction. Although the evidence presented might have been sufficient to support a conviction, this court will not presume to hold that the jury necessarily found Hanahan's testimony to be true. The jury are, of course, the sole judges of credibility of witnesses. *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). They are free to reject even uncontradicted testimony, if they do not find it credible. "A trier is certainly not required to believe testimony merely because it is not directly contradicted"; *Hills* v. *Servicemaster of Connecticut River Valley, Inc.,* 155 Conn. 214, 216–17, 230 A.2d 604 (1967); particularly in a criminal case. The jury might have doubted the uncorroborated testimony offered of the defendant's guilt, but convicted him because he did not take the stand to deny his guilt.

Because the jury might have considered the failure of the defendant to testify in determining the likelihood that the officer's testimony was true, we cannot find the trial court's failure to give a "no inference" charge to be harmless error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.