STATE OF CONNECTICUT *v.* JOHN SINCLAIR
(12035)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued October 1—decision released November 12, 1985

*Joette Katz,* public defender, with whom, on the brief, were *Joseph G. Bruckmann,* assistant public defender, and *Robert Johnson,* for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

PETERS, C. J. The dispositive issue on this appeal is whether the trial judge erred in failing to instruct the jury, as General Statutes § 54-84 (b)[1] requires, that the jury may draw no unfavorable inferences from the defendant's failure to testify in his own behalf. After a trial to a jury, the defendant, John Sinclair, was convicted of burglary in the second degree, in violation of General Statutes § 53a-102,[2] and was sentenced to imprisonment for eight years.

---

[1] "[General Statutes] Sec. 54-84. TESTIMONY OR SILENCE OF ACCUSED. . . . (b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

[2] "[General Statutes] Sec. 53a-102. BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

In his appeal from this conviction, the defendant raises four claims of error: (1) that the evidence presented was insufficient to support the verdict; (2) that evidence of his prior misconduct was erroneously admitted; (3) that the instructions to the jury inadequately informed the jury about intent as an essential element of the crime charged; and (4) that the instructions to the jury failed to include the statutory warning against drawing unfavorable inferences from the defendant's failure to testify. We find error only on the last of these claims.

I

The defendant's first claim of error is that the evidence at trial was insufficient to support the jury verdict. Appellate analysis of such a claim requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State* v. *Braxton,* supra; *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involv-

ing substantial circumstantial evidence." *State* v. *Perez,* supra; *State* v. *Cimino,* supra, 211.

In this case, the jury could reasonably have found the following facts. During the evening of April 19, 1982, two Yale University students reported to police that they had noticed an unknown man trying doors in a suspicious manner inside a student residence hall. Within minutes, a Yale police officer investigating their complaints entered a student suite in the residence hall and found the defendant hiding in a closet in the rear bedroom. The students who resided in that suite had not given him permission to be there. Upon being discovered, the defendant knocked down the police officer who had found him, ran out into the courtyard, and attempted to escape over the fence. When the defendant was subsequently apprehended, he resisted violently, requiring three police officers to subdue him.

In light of this evidence, the defendant concedes that there was sufficient proof of the illegality of his presence in the Yale residence hall.[3] He maintains, however, that the evidence was insufficient to establish that, while there, he intended to commit a crime. Such an intent, as he argues, is what distinguishes the crime of burglary in the second degree, with which he was charged, from the lesser crime of criminal trespass. This issue was properly raised in the trial court by timely motions for acquittal. We agree with the trial court's denial of these motions.

Review of the evidence in this case reveals that the jury could reasonably have found that the defendant had the intent requisite to a finding of guilty of bur-

[3] In oral argument before this court, counsel for the defendant conceded that the state had presented evidence sufficient to establish criminal trespass by the defendant. In closing arguments before the jury at trial, defense counsel conceded that there was "evidence of a man in a place where he doesn't belong."

glary in the second degree. His unlawful and surreptitious presence in the student suite and closet, his flight and his struggle with the police upon his apprehension are all indicative of criminal purpose. The jury was entitled to apply its own knowledge and experience of human nature to this evidence; *State* v. *Little,* 194 Conn. 665, 674, 485 A.2d 913 (1984); and to infer therefrom that the defendant was not merely trespassing. *State* v. *Zayas,* 195 Conn. 611, 617, 490 A.2d 68 (1985); *State* v. *Smith,* 194 Conn. 213, 217–20, 479 A.2d 814 (1984). That the jury might have drawn other possible inferences from these facts is not sufficient to undermine its verdict, since proof of guilt must be established beyond a reasonable doubt, not beyond a possible doubt. *State* v. *Morrill,* 193 Conn. 602, 610–11, 478 A.2d 994 (1984). This claim of error is therefore unpersuasive.

## II

The defendant in his second claim of error maintains that he is entitled to a new trial because of the trial court's erroneous ruling permitting a police officer to testify about the defendant's previous arrests.[4] The defendant now characterizes this evidence as inadmissible because it was evidence of prior misconduct whose strong prejudicial impact far outweighed its minimal probative value. At trial, however, the defendant objected to this evidence solely on the ground of relevance.[5]

---

[4] The testimony at issue:
"State: Did you recognize the defendant?
"Police Officer: Yes.
"State: Do you know him well?
"Police Officer: Well, I have assisted my brother officers in arrests. I also worked in the detective bureau and we deal with photos of known subjects frequently."

[5] Later in the trial, the defendant, briefly acting pro se, moved for a mistrial on the ground that the admission of this testimony was prejudicial to him. The denial of this motion has not been raised on appeal, and so we do not consider it.

Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. Practice Book §§ 3063, 288;[6] *State* v. *Rothenberg,* 195 Conn. 253, 262, 487 A.2d 545 (1985); *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983). The reason for this rule is clear: it is to alert the trial court to an error while there is time to correct it; *State* v. *Rothenberg,* supra, 263; *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); and to give the opposing party an opportunity to argue against the objection at trial. To permit a party to raise a different ground on appeal than was raised during trial would amount to "trial by ambuscade," unfair both to the trial court and to the opposing party. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982); *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960).

The defendant acknowledges that the erroneous admission of prior misconduct evidence, even if established, does not rise to the level of a constitutional violation depriving him of a fair trial. Consequently, this claim does not fall under the narrow "exceptional circumstances" exception articulated in *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1973). Since the

---

[6] "[Practice Book] Sec. 3063. The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

"[Practice Book] Sec. 288. Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

claim of error raised in this appeal is not the same claim raised in the trial court,[7] we, therefore, decline to consider it.

## III

The defendant's third claim is that the trial court's instruction on the elements of the crime was erroneous because it did not include the statutory definition of intent.[8] The defendant took no exception to this portion of the charge at trial. Ordinarily such a failure would render the claim unreviewable on appeal. Practice Book § 854.[9] However, because the failure adequately to instruct the jury on each essential element of the crime charged, including intent, might result in a due process violation implicating the fairness of his trial, we will consider this issue. *State* v. *Zayas,* supra, 616; *State* v. *Smith,* supra, 217; *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

[7] In his reply brief, the defendant purports to make a relevancy claim. However, this is done in the context of his overall prior misconduct evidence claim which was not raised below. The dispositive factor in determining what we will consider on appeal is not the label placed on a claim in a brief, but rather the precise legal ground which was placed before the trial court. In this case, the trial judge was never asked to consider the disputed testimony under the standards for prior misconduct evidence. He was asked to rule, and did, solely on the basis of relevance. Consequently, we now decline to consider a prior misconduct evidence claim, regardless of how it is labeled.

[8] "[General Statutes] Sec. 53a-3. DEFINITIONS. . . . (11) A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

[9] "[Practice Book] Sec. 854. The judicial authority shall deliver the instructions to the jury after the closing arguments. Immediately after the conclusion of the charge to the jury, counsel taking exception shall, out of the presence of the jury, state distinctly the matter objected to and the ground of the exception. The appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered by the party appealing."

The extent of our review of a constitutional issue raised for the first time on appeal is limited. We must determine whether, "considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." *State* v. *Zayas,* supra, 617.

Reviewing the charge in its entirety, we conclude that the jury was adequately instructed on the element of intent. The trial court read General Statutes § 53a-102, which defines burglary in the second degree, in its entirety. The court carefully instructed the jury that a conviction on this charge required the jury to be convinced beyond a reasonable doubt that not only had the defendant entered the building unlawfully, but also that he had done so with intent to commit a crime therein. Although the trial court did not recite the statutory definition of intent, it did equate intent with criminal purpose.

Jury instructions are calculated to give the jurors a clear understanding of the elements of the crime charged, and to afford them proper guidance for their determination of whether those elements were present. *State* v. *Smith,* supra, 219–20. As long as the charge as given achieves these goals, it is constitutionally adequate. In the present case, the trial court's failure specifically to define intent, at least in the absence of a request or exception by the defendant, was not reversible error because it is not reasonably possible that the jury was misled as to its meaning. The word intent was used in its ordinary sense, in a manner which clearly conveyed what had to be proved by the state to justify a conviction. "[W]hen a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error." *State* v. *Kurvin,* supra, 562. Considering the charge as a whole, we conclude that the jury was adequately instructed as to each essential element of the crime.

## IV

The defendant's final claim of error is that his conviction must be set aside because the trial court, in violation of General Statutes § 54-84 (b), failed to instruct the jury that it could draw no unfavorable inferences from the defendant's failure to testify on his own behalf at his trial. The defendant neither requested such a charge nor took exception to the trial court's failure to include it. The statute itself, however, expressly requires that the charge be given "[u]nless the accused requests otherwise."

Our analysis of this claim of error must proceed in three stages. Is the defendant entitled to raise this claim when he did not raise it at trial? If this claim is properly here, was the instruction given by the trial court erroneous? If the instruction was in error, was the error harmless?

This court has had a number of opportunities to review the failure of a trial court to incorporate the requirements of § 54-84 (b) into its instructions to the jury. In none of these cases had the defendant taken an exception at trial. In each of them we chose to review the claim on its merits. Practice Book § 3063; *State* v. *Tatem,* 194 Conn. 594, 595, 483 A.2d 1087 (1984); *State* v. *Carrione,* 188 Conn. 681, 685 n.3, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983); *State* v. *Boulware,* 183 Conn. 444, 446, 441 A.2d 1 (1981); *State* v. *Carter,* 182 Conn. 580, 581, 438 A.2d 778 (1980); *State* v. *Burke,* 182 Conn. 330, 331, 438 A.2d 93 (1980). In these cases, we explained that noncompliance with § 54-84 (b) is plain error because the statute serves to effectuate the fundamental constitutional right of a defendant not to testify in his criminal trial. That right has its origin in the privilege against self-incrimination under both the fed-

eral and the state constitutions.[10] Without proper instructions, as the United States Supreme Court and this court have each independently recognized, a jury may prejudge a defendant because he failed to take the stand and protest his innocence in the face of a criminal accusation. *Carter* v. *Kentucky,* 450 U.S. 288, 305, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981); *State* v. *Tatem,* supra, 599; *State* v. *Cohane,* 193 Conn. 474, 482–83, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). A trial court's failure to limit juror speculation on the meaning of a defendant's silence " 'exacts an impermissible toll on the full and free exercise of the privilege [against self-incrimination].' *Carter* v. *Kentucky,* supra, 305. That rationale is fully appropriate to the application of the mandate of § 54-84 (b) . . . ." *State* v. *Tatem,* supra. This claim of error is properly here.

Examination of the trial court's charge in this case demonstrates its error. The court in no way discharged its constitutional obligation to minimize the danger that the jury might improperly give evidentiary weight to the defendant's failure to testify. The court's charge to the jury made no reference whatsoever to the instruction mandated by § 54-84 (b). We have regularly characterized as error any but the most minor departure from the language that § 54-84 (b) requires. Compare *State* v. *Tatem,* supra, and *State* v. *Carrione,*

---

[10] "The fifth amendment to the United States constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' That provision acts as a restraint upon the individual states as well as the federal government under the fourteenth amendment to the United States constitution. *Malloy* v. *Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1963). Article first, § 8, of the Connecticut constitution affords criminal defendants a similar protection in language at least as broad as its federal counterpart. That section, which sets forth the rights of accused persons in criminal prosecutions, provides that '[n]o person shall be compelled to give evidence against himself . . . .' " *State* v. *Cohane,* 193 Conn. 474, 482, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).

supra, with *State* v. *Boulware,* supra.[11] A fortiori, failure to instruct at all under § 54-84 (b) was error. *State* v. *Carter,* supra; *State* v. *Burke,* supra.

The state maintains, however, that, despite this error of constitutional dimension, we need not set aside the defendant's conviction because the error in the charge to the jury was harmless. The applicable test requires the state to prove beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled. *State* v. *Tatem,* supra, 599; *State* v. *Carrione,* supra, 685. The state offers two arguments in this regard: the allegedly overwhelming nature of the evidence against the defendant and the defendant's purported desire during the trial not to call attention to his decision not to testify. We are not persuaded.

In our analysis of harmless error, we must first consider whether total noncompliance with § 54-84 (b) can ever be harmless. A test that looks to the curative power of the charge as a whole more readily saves an imperfect rendering of the statutory mandate than its total omission. The state reminds us, however, that, in cases arising before the effective date of the statute, where we found constitutional error in a trial court's total failure to comply with a defendant's express request to give a "no adverse inference"

---

[11] In cases where a no unfavorable inferences charge was given, but in language deviating slightly from the precise wording of the statute, we have examined the entire charge to see if the words as given were sufficient to satisfy the statute. *State* v. *Dolphin,* 195 Conn. 444, 488 A.2d 812 (1985) (added a phrase); *State* v. *Marra,* 195 Conn. 421, 489 A.2d 350 (1985) (omitted the word "unfavorable"); *State* v. *Tatem,* 194 Conn. 594, 483 A.2d 1087 (1984) (substituted "unreasonable" for "unfavorable"); *State* v. *Carrione,* 188 Conn. 681, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983) (substituted "impressions" for "inference"); *State* v. *Boulware,* 183 Conn. 444, 441 A.2d 1 (1981) (inserted word "merely").

instruction, we have inquired into the possible harmlessness of the error. *State* v. *Cohane,* supra, 485; *State* v. *Dudla,* 190 Conn. 1, 6, 458 A.2d 682 (1983);[12] see *Carter* v. *Kentucky,* supra, 304. We did not, however, undertake such an inquiry when we held that total noncompliance with § 54-84 (b) constituted plain error. *State* v. *Carter,* supra; *State* v. *Burke,* supra.

There is much to be said in favor of a rule that violation of the mandate of § 54-84 (b) automatically requires a new trial. In the context of constitutional error arising out of failure to give a "no adverse inference" instruction, we expressly reserved the question whether noncompliance with so central an aspect of the privilege against self-incrimination could ever be considered harmless error. *State* v. *Cohane,* supra, 484; see *Carter* v. *Kentucky,* supra, 304. Indubitably, the legislature has the power to implement constitutional rights in a manner that is more stringent than the constitution itself provides. In enacting § 54-84 (b), the legislature has done so.[13] While the constitutional right to a "no adverse inference" charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given. It would be entirely reasonable to conclude that the principle of harmless error may be inconsistent with the unconditional language of the statute that the legislature has enacted for the protection of the right not to testify.

---

[12] In both cases, we held that the error was not harmless.

[13] Public Acts 1977, No. 77-360, which became General Statutes § 54-84 (b), was proposed in response to our holding in *State* v. *Branham,* 171 Conn. 12, 368 A.2d 63 (1976). In that case, we held that the constitution did *not* require a no adverse inferences instruction. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1977 Sess., p. 1251, testimony by Gerald (sic) Barnett.

We need not, however, resolve this question today because our review of the record in this case persuades us that the state has not proven beyond a reasonable doubt that the trial court's failure to instruct in accordance with § 54-84 (b) was harmless. Although the evidence presented at trial was, as we have held, sufficient to justify the defendant's conviction, the evidence of the defendant's intent to commit a crime in the student residence hall was not overwhelming. On this essential element of the crime of burglary in the second degree, the jury might well have buttressed the state's circumstantial evidence with an unfavorable inference improperly drawn from the defendant's failure to explain his conduct. Furthermore, the record does not demonstrate that the defendant expressly or impliedly requested the court not to give the § 54-84 (b) instruction.[14] Finally, the state cannot rely on the defendant's alleged desire, during the trial, not to call the jury's attention to his decision to remain silent.[15] The statute imposes upon the court and not upon defense counsel the obligation to inform the jury that a defendant has a constitutional right not to testify.[16]

[14] The state has suggested, both in its brief and during oral argument before this court, that the defendant may have made such a request "off the record." In fact, it describes this as the "most likely" course of events. We can only reply that, even if that is so, it makes no difference to the outcome of this appeal. It is beyond dispute that this court can consider only those matters contained in the record before us. Practice Book § 3060D; *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 465, 378 A.2d 547 (1977). Any other rule would invite this court to engage in speculation. This we decline to do.

[15] The state cites defense counsel's failure either to request the charge or take exception to the charge as given, his failure to refer to the defendant's decision not to testify either during the voir dire or in closing argument, and defense counsel's familiarity with General Statutes § 54-84 (b) as indications that he did not want this issue brought to the attention of the jury.

[16] See 20 S. Proc., Pt. 5, 1977 Sess., pp. 2068–69, remarks of Senator Salvatore C. DePiano on Senate floor.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion HEALEY, DANNEHY and SANTANIELLO, Js., concurred.

SHEA, J., concurring. I write separately to express my reservations concerning one wholly superfluous sentence in the majority opinion: "It would be entirely reasonable to conclude that the principle of harmless error may be inconsistent with the unconditional language of the statute that the legislature has enacted for the protection of the right not to testify." That sentence, though equivocal, is likely to be construed as an intimation that this court will not apply the harmless error principle to an inadvertent failure of the trial court, inculpating also counsel for the state and for the defendant who neglect to call attention to the matter, to give the "no adverse inference" instruction mandated by General Statutes § 54-84 (b). As the opinion recognizes, we have no need to adopt that position at this time because the evidence of intent was not so overwhelming as to render the error harmless. We reserved this issue in *State* v. *Cohane,* 193 Conn. 474, 484, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), under similar circumstances when it was not necessary to decide it. This case presents no more appropriate an occasion to resolve the issue.

Because the majority opinion so broadly hints that this court would eschew harmless error and adopt a rule of automatic reversal for failure to follow the mandate of § 54-84 (b), I must express my great reluctance to fashion another automatic reversal rule that would impose on the judicial system of this state the burden of a new trial no matter how overwhelming the evidence of guilt may be. Accordingly, I do not join in the sentence of the opinion in question.