## STATE OF CONNECTICUT *v.* CHARLES THURMAN
## (3383)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued December 2, 1986—decision released March 31, 1987

*Eugene J. Riccio,* public defender, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *Dennis Santore,* state's attorney, and *Mary K. Miller,* legal intern, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of assault in the first degree in violation

of General Statutes § 53a-59 (a) (1). On appeal from the judgment of conviction, the defendant challenges the trial court's charge to the jury. The defendant claims that the trial court erred (1) by failing to instruct the jury that it could draw no unfavorable inferences from the defendant's failure to testify in his own behalf at trial, (2) by failing to define certain terms contained in the charge regarding the defense of lack of criminal responsibility by reason of mental disease or defect, and (3) by failing to provide an unambiguous and adequate instruction on the defense of diminished capacity.

The jury could have reasonably found certain facts. The victim of the assault was married to, but separated from, the defendant at the time of the incident. The couple had an infant son who was in the victim's care and custody. The defendant was frustrated at not being able to see his child. Prior to the incident, the defendant had made numerous threats in the presence of others indicating that he would kill or hurt the victim.

On June 19, 1983, the defendant went to the victim's residence to dissuade her from pursuing divorce proceedings. Upon his arrival, the victim summoned the police. When a patrol car arrived, the defendant became upset and pulled out a knife. He grabbed the victim by the hair and stabbed her in the head and facial area. While the victim was on the ground, the defendant stabbed her in the back of her neck.

The defendant subsequently went into the victim's house to retrieve his infant son. He returned to the victim, kicked her in the face, and told the baby that he had "killed his fucking mother." The defendant was ultimately restrained by additional police officers and taken into custody. As a result of the defendant's attack, the victim suffered multiple stab wounds in the neck and posterior pharynx, severe injury to the spinal cord and extensive laceration from the face to the neck.

The defendant did not testify at his trial. His defense consisted of the testimony of two expert witnesses.[1] A neuropsychologist who had examined the defendant and conducted a series of neuropsychological tests prior to trial testified that the defendant suffered from brain damage. The neuropsychologist revealed that as a result of the brain damage, the defendant's visual motor ability and skills were impaired and were equivalent to that of a six year ten month old child. The neuropsychologist further testified that she had found the defendant's IQ to be in the borderline mentally retarded range, and that his emotional level was that of a six or seven year old child. She concluded that the defendant acted on a very impulsive primitive level.

The defendant's second expert witness qualified as both a psychiatrist and a neurologist. He testified that he had conducted a complete neurological and psychiatric evaluation of the defendant, and that the results indicated that the defendant had limited intellectual functioning. On the basis of his examination, this expert witness concluded that the defendant suffered from "intermittent explosive disorder," a condition which prevented the defendant from controlling violent impulses. In addition, he testified that the defendant suffered from organic mental disorder resulting from brain damage. The expert witness concluded that, in his opinion, the defendant's organic mental disease rendered the defendant substantially incapable of conforming his behavior to the requirements of law.

In rebuttal, the state introduced the expert testimony of a psychiatrist who also had examined the defend-

[1] Testimony of the witnesses, both in and out of the presence of the jury, was that the defendant had been brain damaged from birth. The defendant's psychiatrist testified that the defendant was born after only about five months gestation, and weighed slightly over a pound at birth. Following his premature birth, the defendant was in the hospital for twenty-seven weeks.

ant prior to trial. The state's psychiatrist testified that, in his opinion, the defendant did not manifest the symptoms of intermittent explosive disorder, and that he functioned at a level well beyond that of a seven year old. Although the psychiatrist agreed that the defendant was brain damaged and troubled, he concluded that the defendant had the capacity to appreciate the wrongfulness of his conduct at the time of the incident.

I

In his first claim of error, the defendant alleges that the trial court erred in failing to instruct the jury pursuant to General Statutes § 54-84 (b). That statute provides in relevant part that "[u]nless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify." The defendant neither requested a charge on the statute, nor did he take an exception to the trial court's failure to give it.

Our analysis of the defendant's claim necessarily involves three stages of inquiry. " '[1] Is the defendant entitled to raise this claim when he did not raise it at trial? [2] If this claim is properly here, was the instruction given by the trial court erroneous? [3] If the instruction was in error, was the error harmless?' " *State* v. *Cobb,* 199 Conn. 322, 324, 507 A.2d 457 (1986), quoting *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985).

The defendant's challenge to the trial court's failure to include the statutorily mandated instruction is twofold. First, he claims that such failure violated his constitutional rights guaranteed under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[2]

---

[2] The fifth amendment to the United States constitution provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." This amendment is applicable to the

In addition, he alleges that the omission of the instruction violated his rights under General Statutes § 54-84 (b). The state maintains that both of the defendant's claims are unreviewable because of his failure to submit a request to charge or to except to the charge as given. We conclude that the defendant's constitutional claim is reviewable under *State* v. *Evans*, 165 Conn. 61, 70–71, 327 A.2d 576 (1973), and that his second statutory claim is reviewable under the plain error doctrine.

Because our cases have not been uniform in defining the proper standards in an *Evans* claim; compare, e.g., *State* v. *Cosby*, 6 Conn. App. 164, 504 A.2d 1071 (1986), with *State* v. *Newton*, 8 Conn. App. 528, 513 A.2d 528 (1986); we here clarify our formulation. We "must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question." *State* v. *Newton*, supra, 531. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." Id.

First, does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right? This question looks solely to whether the label which the defendant places on the claim is constitutional in nature.

Second, is the defendant's constitutional claim adequately supported by the record? This question requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant.

states because of the due process clause of the fourteeth amendment to the United States constitution.

Article first, § 8, of the Connecticut constitution provides in pertinent part that "[n]o person shall be compelled to give evidence against himself . . . ."

In those instances in which our Supreme Court or this court has already clearly indicated that the particular claim is or is not of constitutional proportions and therefore reviewable or not reviewable, a summary "yes" or "no" answer may be sufficient.

Third, "was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant?" *State* v. *Newton,* supra. This question requires that we *fully* review the defendant's claim to determine whether a fundamental constitutional right of his was violated.

Fourth, "did the deprivation deny the defendant a fair trial, thereby requiring" that his conviction be set aside? Id. This question requires that we determine, under appropriate standards of harmless error or other similar doctrines, whether the error requires reversal.

In *State* v. *Boulware,* 183 Conn. 444, 441 A.2d 1 (1981), our Supreme Court held that a claim alleging a deprivation of a constitutional right resulting from the trial court's failure to include the "no adverse inference" instruction is reviewable under the familiar *Evans* bypass because "it amounts to a claim that the defendant was deprived of a fundamental constitutional right and a fair trial and the record is sufficiently complete for us to consider the claim on the merits. *State* v. *Evans,* [supra, 70–71]." *State* v. *Boulware,* supra, 446.[3] Thus, we answer, in a summary fashion, the first two questions of our formulation with a "yes."

---

[3] *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985), cites *State* v. *Boulware,* 183 Conn. 444, 446, 441 A.2d 1 (1981), as holding that the claim should be reviewed on its merits, but does not make it clear whether such review in *Boulware* was afforded under the *Evans* rule or the plain error doctrine. The *Sinclair* court stated, however, that the failure to give the "no adverse inference" charge at all is error of "constitutional dimension." *State* v. *Sinclair,* supra, 584; see also *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985).

Since the defendant's constitutional claim is reviewable under *State* v. *Evans,* we now consider whether the instruction given by the trial court was erroneous. We note that our federal and state constitutions afford the defendant the right to have the court instruct the jury that no adverse inferences may be drawn from his failure to testify *only upon the defendant's proper request. Carter* v. *Kentucky,* 450 U.S. 288, 305, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981); *State* v. *Boulware,* supra, 447. Thus, when a defendant requests such a charge, the trial court has a constitutional obligation to include it. *State* v. *Cohane,* 193 Conn. 474, 482–83, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *State* v. *Carrione,* 188 Conn. 681, 683–84, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1984, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983). When no request is made by the defendant, however, the court has *no* such constitutional duty to provide the instruction. *State* v. *Boulware,* supra; *State* v. *Branham,* 171 Conn. 12, 368 A.2d 63 (1976).[4] In the present case, the defendant made no request for the "no adverse inference" instruction. We hold, therefore, that the trial court's failure to include the instruction did not deprive the defendant of his constitutional rights. See *State* v. *Boulware,* supra.

We next consider the defendant's claim under General Statutes § 54-84 (b). Since the enactment of the statute, our Supreme Court has had numerous opportunities to review the failure of a trial court to incorporate the express language provided in § 54-84 (b) into its instructions to the jury where the defendant failed to take an exception at trial. *State* v. *Cobb,* supra; *State*

---

[4] Our Supreme Court held in *State* v. *Branham,* 171 Conn. 12, 368 A.2d 63 (1976), that the constitution does *not* require a "no adverse inference" instruction. General Statutes § 54-84 (b) was enacted in response to the court's holding in *Branham. State* v. *Sinclair,* 197 Conn. 574, 585 n.13, 500 A.2d 539 (1985). Thus, even though the constitution does not require such an instruction, it is clear that § 54-84 (b) does.

v. *Sinclair,* supra; *State* v. *Tatem,* 194 Conn. 595, 483 A.2d 1087 (1984); *State* v. *Carrione,* supra; *State* v. *Boulware,* supra; *State* v. *Carter,* 182 Conn. 580, 438 A.2d 778 (1980); *State* v. *Burke,* 182 Conn. 330, 438 A.2d 93 (1980). In each of these cases, the court has uniformly and consistently decided to review the merits of the claim on the basis of its finding that noncompliance with the statute constituted plain error. See Practice Book § 4185 (formerly § 3063). Thus, despite the state's argument to the contrary, the defendant's claim is reviewable and properly before this court.[5]

The provisions of § 54-84 (b) are more stringent than the federal or state constitutions require. *State* v. *Sinclair,* supra, 585. "While the constitutional right to a 'no adverse inference' charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given." Id. Our legislature has prescribed the language provided in § 54-84 (b) to be the jury instruction that *must* be given to reduce speculation to a minimum. *State* v. *Cobb,* supra, 324. For this reason, our Supreme Court has "regularly characterized as error any but the most minor departure from the language that § 54-84 (b) requires. Compare *State* v. *Tatem,* supra, and *State* v. *Carrione,* supra, with *State* v. *Boulware,* supra." *State* v. *Sinclair,* supra, 583–84. We conclude,

---

[5] In its brief, the state urges this court to reexamine the precedent established by *State* v. *Burke,* 182 Conn. 330, 438 A.2d 93 (1980), in which our Supreme Court first established that the failure of the trial court to give a "no adverse inference" instruction was reviewable under the plain error doctrine. The state claims that the holding in *Burke* was intended to be limited to its precise facts. We note, however, that in all cases subsequent to *Burke,* our Supreme Court has adhered to the premise that such claim is reviewable under the plain error doctrine. As we recognized in *O'Connor* v. *O'Connor,* 4 Conn. App. 19, 20, 492 A.2d 207 (1985), this court will not reexamine or reevaluate Supreme Court precedent. Whether or not the holding of *State* v. *Burke,* supra, and subsequent cases should be reevaluated and possibly discarded is not for this court to decide.

therefore, that it was error for the trial court not to include the express language of the statute in its charge to the jury.

We now must determine whether the error was harmless. At the outset, we note that the cases in which our Supreme Court has utilized this final prong of harmless error analysis are those in which a "no adverse inference" instruction was given, but which did not follow the exact wording of the statute. See, e.g., *State* v. *Cobb,* supra; *State* v. *Tatem,* supra; *State* v. *Carrione,* supra; *State* v. *Boulware,* supra. In those cases, minor deviations from the precise language provided in the statute and which did not change the substantive meaning of the statute were held to be harmless error.[6]

In cases in which there was a *total omission* on the part of the trial court of the "no adverse inference" instruction, however, our Supreme Court has previously found automatic reversible error without any application of harmless error analysis. See, e.g., *State* v. *Carter,* supra; *State* v. *Burke,* supra. In *State* v. *Sinclair,* supra, the court considered for the first time whether or not a harmless error analysis should be

---

[6] In *State* v. *Cobb,* 199 Conn. 322, 324, 507 A.2d 457 (1986), for example, the trial court instructed that the jury could draw "no inference" instead of "no unfavorable inference" from the fact that the defendant did not testify in his own behalf. The court found that the error was harmless. Likewise, the court found harmless error in *State* v. *Carrione,* 188 Conn. 681, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983), where the trial court substituted the words "no legal impressions" for "no unfavorable inferences." In *State* v. *Marra,* 195 Conn. 421, 489 A.2d 350 (1985), the court found harmless error where the trial court used the words "no inference or taint" in lieu of the statutorily prescribed language. The court also found harmless error in *State* v. *Boulware,* 183 Conn. 444, 441 A.2d 1 (1981), where the trial court inserted the word "merely" in its "no adverse inference" instruction. In *State* v. *Tatem,* 194 Conn. 594, 483 A.2d 1087 (1984), on the other hand, the court found reversible error where the trial court instructed the jury that it could draw "no unreasonable inference" from the accused's failure to testify. In that case, the court determined that the use of the word "unreasonable" changed the substantive meaning of the statute. Id.

taken in those cases in which there was total noncompliance with § 54-84 (b). Although the court specifically reserved such question for future resolution,[7] it recognized that "[t]here is much to be said in favor of a rule that violation of the mandate of § 54-84 (b) automatically requires a new trial. . . . It would be entirely reasonable to conclude that the principle of harmless error may be inconsistent with the unconditional language of the statute that the legislature has enacted for the protection of the right not to testify." *State* v. *Sinclair,* supra, 585.

Our thorough review of the entire charge given to the jury by the trial court indicates that there was total noncompliance with § 54-84 (b).[8] Nowhere in the charge is the mandatory language of the statute provided. Moreover, the substantive meaning of the statute was never communicated to the jury. Rather, the charge provided the jury with an explanation of the burden and standard of proof, the presumption of innocence, and the fact that the defendant had a constitutional

---

[7] In *State* v. *Sinclair,* 197 Conn. 574, 586, 500 A.2d 539 (1985), the court stated: "We need not, however, resolve this question today because our review of the record in this case persuades us that the state has not proven beyond a reasonable doubt that the trial court's failure to instruct in accordance with § 54-84 (b) was harmless."

[8] The portions of the jury charge which the state cites as being in conformity with the requirement of § 54-84 (b) are as follows: "The State has the burden of proof beyond a reasonable doubt. Every party charged with a crime comes to court innocent in your eyes until he is proven guilty beyond a reasonble doubt. You are not to derive any taint or imputation of guilt from the fact he sits before you in the courtroom charged with a crime. There is no burden upon him to say a word if he does not wish to do so. The burden is on the prosecution throughout and if the prosecution does not prove its case beyond a reasonable doubt, then you must acquit the defendant. . . .

"The defendant, Charles Thurman, has not testified in this trial. An accused person is under no obligation to become a witness in his own behalf. Under our law, a defendant in a criminal trial may either testify or not, as he sees fit. It is for the State to prove him guilty, and no burden rests upon the defendant to prove his own innocence."

right not to testify.[9] It was not sufficient, under the provisions of § 54-84 (b), for the trial court to inform the jury of these principles. The charge to the jury did *not* convey to the jury the premise that they could not draw any unfavorable inferences from the fact that the defendant did not take the stand and testify, as required by § 54-84 (b). Jurors, even with the knowledge that the defendant had a constitutional right not to testify, may nevertheless conclude that a defendant who invokes such a right is guilty. " 'Too many [jurors], even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are . . . guilty of crime . . . .' " *Carter* v. *Kentucky,* supra, 302. For this very reason, our legislature, in its enactment of § 54-84 (b), has required that the trial judge give a charge specifically instructing the jurors not to draw any adverse inferences from the fact that the defendant has elected to exercise his constitutional right not to testify. "A trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction

---

[9] The substance of the instructions given in the present case is virtually identical to that of the instructions given in *State* v. *Burke,* 182 Conn. 330, 438 A.2d 93 (1980), in which the court found reversible error. In both cases, the jury instructions informed the jury of the burden and standard of proof, the presumption of innocence, and the fact that the defendant has a constitutional right not to testify. In *Burke,* the following instructions were given: "The accused, who may also be referred to as the defendant, under our law is presumed to be innocent until proven guilty. This means that when the accused was presented for trial before you he stood before you free from any bias, prejudice or burden arising from his position as the accused. So far as you are concerned he was then innocent and he continues innocent until such time as the evidence in the matters produced here in the orderly conduct of the case satisfies you beyond a reasonable doubt that he is guilty. . . .

"The accused does not have to prove that he did not commit the offense with which he stands charged. The burden of proving the guilt of the accused is upon the State. The defendant does not have to prove his innocence as I said before, and he has a right to remain silent. The State must prove guilt beyond a reasonable doubt." Connecticut Supreme Court Records and Briefs, Pt. 2, October Term (1980).

. . . . No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can . . . use the unique power of the jury instruction to reduce that speculation to a minimum." Id., 303.[10]

Our finding that the trial court's instructions resulted in total noncompliance with § 54-84 (b) could constitute automatic reversible error under the precedent established by *State* v. *Burke,* supra, and *State* v. *Carter,* supra. The state argues, however, that a harmless error analysis must be undertaken in this case. Even if such a harmless error analysis were undertaken, our review of the record in this case leads us to the conclusion that the state has not proven beyond a reasonable doubt that the trial court's total noncompliance with § 54-84 (b) was harmless.[11] See *State* v. *Sinclair,* supra. An error may be held to be harmless only if the evidence against the defendant "is so overwhelming that we can conclude as a matter of law that the jury's verdict was not influenced by the absence of a 'no-adverse-inference' instruction." *State* v. *Cohane,* supra, 485. In support

[10] The state asserts in its brief that the trial court's jury instructions, taken as a whole, substantially complied with § 54-84 (b). As support for this argument, the state argues that the instructions informed the jury that they were entitled to consider only the evidence in the case, and that the defendant's failure to testify did not constitute evidence. For this reason, the state maintains that such instructions substantially complied with the intent and meaning of the statute. The state's argument, however, was specifically rejected by the United States Supreme Court in *Carter* v. *Kentucky,* 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). The Court recognized that "[j]urors are not lawyers; they do not know the technical meaning of 'evidence'. They can be expected to notice a defendant's failure to testify, and, without limiting instruction, to speculate about incriminating inferences from a defendant's silence." Id., 303–304.

[11] In *State* v. *Sinclair,* 197 Conn. 574, 584, 500 A.2d 539 (1985), the court held that because § 54-84 (b) serves to *effectuate* the fundamental constitutional right of a defendant not to testify in his criminal trial, the applicable test "requires the state to prove beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled."

of its contention that the error in this case was harmless, the state relies upon the allegedly overwhelming nature of the evidence against the defendant and the diminished need for such an instruction when a defendant asserts the insanity defense. The state argues that where the defendant asserts the insanity defense and his version of the facts is given through the testimony of psychiatric witnesses, "the jury would reasonably assume only that the defendant's testimony at trial would have been consistent with his statements to the psychiatric witnesses," and there would therefore be no need for the "no adverse inference" instruction.[12]

Although the defendant did not testify at trial, his account of the events of June 19, 1983, was presented through the testimony of psychiatric witnesses. A total of three expert witnesses who had evaluated the defendant prior to trial testified as to their conclusions. All three expert witnesses testified that the defendant suffered from brain damage. Two of the three witnesses testified that the defendant was either legally insane or of diminished capacity at the time of the incident. Only the state's psychiatrist testified that the defendant was legally sane. The jury chose to believe the testimony of the state's psychiatric witness. The fact that the jury chose to believe the state's expert witness does not mean that the evidence against the defendant was "overwhelming," or that the jury found both of the defendant's expert witnesses to be without credibility.[13]

---

[12] In both *State* v. *Cohane,* 193 Conn. 474, 479 A.2d 763, (1984), and *State* v. *Carter,* 182 Conn. 580, 483 A.2d 778 (1980), the defense of insanity was raised by the defendant, and testimony of expert psychiatric witnesses was introduced in support of such defense. In both cases, our Supreme Court found reversible error when the trial court failed to provide a "no adverse inference" instruction. Thus, the state's suggestion that the need for the "no adverse inference" instruction is significantly lessened in this type of case has not been recognized by our Supreme Court.

[13] In *State* v. *Cohane,* 193 Conn. 474, 486, 479 A.2d 763 (1984), the court noted that all of the psychiatrists who testified at trial had similar and equally

See *State* v. *Cohane,* supra, 485–86. Rather, "[t]he more logical conclusion is that the jury did not believe the representations made by the defendant to those psychiatrists about his mental state" at the time of the incident. Id., 486.

For this reason, the defendant's credibility was of crucial concern to the jury, and "it was particularly important that the jury assess his claim without prejudice." Id. Such was the very purpose of the "no adverse inference" instruction mandated by § 54-84 (b), and its need was particularly strong in the present case. *State* v. *Cohane,* supra, 486–87. Contrary to the state's position, the fact that the defendant's account was made known to the jurors through the proffered testimony of expert witnesses does not necessarily imply that no adverse inference could have been drawn from the defendant's failure to testify on his own behalf. The jury might very well have considered the failure of the defendant to testify in determining the likelihood that the testimony of the state's psychiatric witness was true. Because they were unable to observe the defendant on the witness stand, the jury might have buttressed the state's evidence with an unfavorable inference improperly drawn from the defendant's silence at trial. Accord *State* v. *Sinclair,* supra, 586. The trial court's failure to give the "no adverse inference" instruction, therefore was not harmless in this case. Id.

---

impressive credentials. In the present case, all three expert witnesses were likewise of equally impressive credentials. The two expert witnesses for the defendant in this case were: Emily Littman, who holds a Ph.D in counseling psychology and is currently an assistant clinical professor of psychology and psychiatry at Yale University School of Medicine; and James Merikangas, a licensed, practicing psychiatrist and neurologist currently on the faculty of the Yale University School of Medicine. The state's expert witness was Ezra Griffith, a licensed psychiatrist and faculty member of the Yale University School of Medicine.

The state maintains that there was considerable evidence presented which established that the defendant had indicated his intent to harm the victim on prior occasions, and that such evidence would negate a finding of insanity or diminished capacity. We find, however, that although the jury may have disbelieved the defendant's defense because of this evidence, the state has not established beyond a reasonable doubt that a properly instructed jury would have reached the same conclusion. See *State* v. *Cohane,* supra, 487.

We must find reversible error in this case because of the express mandate of our legislature in its enactment of § 54-84 (b) and because of the clear precedent established by our Supreme Court. The state cautions us that public confidence in judicial proceedings will be threatened if what it claims is a presumptively valid conviction is reversed under the facts of this case. That confidence, however, cannot be enhanced or furthered by a holding which affirms such a conviction in direct contravention of a legislative mandate as interpreted by our Supreme Court. Our duty is to follow controlling judicial precedent rather than to base a decision on our own view or the popular view of what the law ought to be. This decision directly affects only this defendant, but tomorrow's case, involving some other defendant, may depend upon the reasoning of this decision. Public confidence in the legislative will and in the precedent of the highest court of this state is least threatened when both are followed.

There are two critical flaws in the analysis presented by the dissenting opinion. First, it totally ignores the holding of *State* v. *Burke,* supra, and the cases which have been decided by our Supreme Court after *Burke.* See, e.g., *State* v. *Cobb,* supra; *State* v. *Sinclair,* supra; *State* v. *Marra,* 195 Conn. 421, 489 A.2d 350 (1985); *State* v. *Tatem,* supra; *State* v. *Carrione,* supra; *State* v. *Boulware,* supra; *State* v. *Carter,* supra. In all of

these cases, our Supreme Court found error by the trial court when it failed to give the statutorily mandated charge in the absence of the express request of a defendant that it not be given. This court simply does not enjoy the luxury of ignoring binding precedent of our highest court. The dissent admits that the law is "currently interpreted" as stated in the majority opinion. Second, the theory of the dissent is that the defendant's failure to except to the trial court's charge "amounted to a consent to and ratification of the charge and was the functional equivalent of a request to the court that it not include the no adverse inference instruction in its charge." This theory of constructive, not actual, consent and ratification is inconsistent with the same Supreme Court cases. In all those cases, our Supreme Court was faced with a record in which the defendant's failure to except to the trial court's charge was as clear as was this defendant's, and in none of those cases did the court adopt the transparent fiction that the defendant consented to and ratified the court's omission. Furthermore, at oral argument in this court the counsel for the defendant, who was trial counsel in this case, assured us as an officer of the court that his silence was inadvertent and not the trial tactic postulated by the dissent.

Although a new trial must be ordered in this case because of the trial court's failure to include the "no adverse inference" instruction, the remaining claims of error presented by the defendant are considered since they are likely to recur on retrial. See *Lamb* v. *Burns,* 202 Conn. 158, 166, 520 A.2d 190 (1987); *State* v. *Delgado,* 8 Conn. App. 273, 283–84, 513 A.2d 701 (1986).

## II

The defendant's second claim of error challenges the failure of the trial court to define the terms "appreci-

ate" and "wrongfulness" contained in its charge to the jury on the insanity defense as provided in General Statutes § 53a-13.[14] In his request to charge, the defendant specifically requested that the trial court define both terms. The defendant asserts that the trial court erred in failing to instruct pursuant to his request to charge.

The defendant's request to charge did not constitute a proper written request to charge because it did not conform to the provisions of our rules of practice. Practice Book § 852 requires that "[r]equests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply." The defendant's request to charge contained proposed definitions of the terms "appreciate" and "wrongfulness" in two separate paragraphs.[15] Neither paragraph, however, contains cited authority. Although the defendant has cited numerous cases in his brief which support his requested definitions; see, e.g., *United States* v. *Segna*, 555 F.2d 226,

[14] General Statues § 53a-13 provides in pertinent part: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[15] The defendant's request to charge contained the following paragraphs: "Appreciate, as used in this statute means more than a mere theoretical awareness that a certain course of conduct is wrong. Mere surface knowledge is not sufficient to meet this requirement. By surface knowledge, I mean the type of knowledge children have of propositions which they can state but cannot understand. Such knowledge has no depth and is divorced from the comprehension and understanding required by this phrase in the statute.

"Wrongfulness means moral wrongfulness rather than criminal wrongfulness. In other words, if you find that the defendant, because of a mental disease or defect, lacked substantial capacity to appreciate the wrongfulness of his conduct even if he knows his conduct to be criminal but so commits it because of a delusion that he was morally justified then your verdict must be not guilty."

232 (9th Cir. 1977); *United States* v. *McGraw,* 515 F.2d 758, 760 (9th Cir. 1975); *United States* v. *Freeman,* 357 F.2d 606, 623 (2d Cir. 1966); *State* v. *Gethers,* 193 Conn. 526, 554–55, 480 A.2d 435 (1984) (*Healey, J.,* dissenting); he failed to provide these or any other cases in his request to charge. See *State* v. *Hancich,* 200 Conn. 615, 623, 513 A.2d 638 (1986). The trial court was therefore not properly alerted to such authority, and was not required to provide the defendant's requested charge. See id.; *State* v. *Jenkins,* 8 Conn. App. 35, 41, 510 A.2d 1370 (1986); *State* v. *Timmons,* 7 Conn. App. 457, 465, 509 A.2d 64 (1986).

The defendant claims on appeal, however, that because the primary issue in the case was the defendant's mental state, the trial court was required to provide comprehensive and adequate guidelines to the jury on the insanity defense. As such, he asserts that the definitions of these terms were necessary in order to afford proper guidance and instruction. The defendant thus maintains that the jury instructions, by failing to define these terms, did not adequately present the insanity defense to the jury. Although the defendant's failure either to provide a proper request to charge in compliance with Practice Book § 852 or specifically to except to the trial court's charge would ordinarily preclude our review of this claim;[16] *State* v. *Kurvin,* 186

---

[16] Although the defendant asserts that he preserved his claim of error by excepting to the trial court's failure to define these terms immediately after the charge was delivered to the jury, our careful review of the record indicates that his exception was *only* to the trial court's failure to include his request to charge. The record indicates that the following exception was taken by the defendant's counsel:

"Mr. Riccio: Paragraph 5, I take exception in not charging on what I requested.

"The Court: What is paragraph 5?

"Mr. Riccio: My insanity request. I requested definitions, some of which the Court gave and some of which it did not, but the charge on wrongfulness the Court did not give in its charge, and I take exception to that."

*The record reflects, therefore, that the defendant did not specifically*

Conn. 555, 565, 442 A.2d 1327 (1982); we consider the issue because it may arise on retrial. See *Lamb* v. *Burns,* supra, 174.

It is not error for a trial court to refuse to define terms which are " 'used and might be understood in their ordinary meanings.' " *State* v. *Lewtan,* 5 Conn. App. 79, 85, 497 A.2d 60 (1985), quoting *State* v. *Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977). Moreover, dictionary definitions are taken as a matter of common knowledge which the jury is supposed to possess. *State* v. *Lewtan,* supra, citing *State* v. *Asherman,* 193 Conn. 695, 737, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). The definition of the word "appreciate" which was requested by the defendant is the same as that which is presented in our standard dictionaries. *State* v. *Gethers,* supra, 554–55 (*Healey, J.,* dissenting). Because the term is commonly used and may be understood by the jury in its ordinary meaning as defined by the dictionary, the trial court was not required to include the defendant's requested definition of "appreciate."

The defendant claims that the word "wrongfulness" encompasses certain meanings and legal significance which transcend its ordinary meaning. He asserts that "wrongfulness" is properly defined as moral instead of criminal wrongfulness, and that the trial court erred

---

except to the trial court's alleged failure to adequately present the insanity defense to the jury. Exceptions to a trial court's charge must be distinct and specific to preserve the claim. *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986). "The requirement that the claim be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the precise matter on which its decision is being asked.' (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903)." *State* v. *Carter,* supra. The defendant's exception to the trial court's charge to the jury, therefore, was inadequate to specifically alert the trial court to the error now claimed on appeal. See id.

in failing so to instruct the jury. The meaning of the word "wrongfulness," however, is subject to varying interpretations. *United States* v. *Segna,* supra. The definition asserted by the defendant is but one of three generally accepted definitions which have been recognized.[17] Id., citing H. Fingarette, The Meaning of Criminal Insanity (1972) pp. 152–57; A. Goldstein, The Insanity Defense (1967) pp. 51–53. In his brief, the defendant has cited various cases from other jurisdictions which have construed the word "wrongfulness" to connote moral wrongfulness. See, e.g., *United States* v. *Segna,* supra; *United States* v. *McGraw,* supra. In these cases, the Ninth Circuit has determined that the trial court must, when properly requested, provide this definition *only if* "the record contains evidentiary support for the defendant's theory that, although he realized the offending act was illegal, because of mental disease he possessed a false belief that the act was morally justified." *United States* v. *Segna,* supra, 233.

The record in the present case does *not* support such an instruction. The defendant's theory was that he did not have the capacity to realize that his act was illegal. It was not the theory of the defendant that his assault was, in his opinion, morally justified, but rather,

---

[17] In *United States* v. *Segna,* 555 F.2d 226, 232 (9th Cir. 1977), the court recognized the following three possible definitions of criminal responsibility: "First, the word may mean legally wrong, or 'contrary to law.' Thus a person is criminally responsible if he has substantial capacity to appreciate that his act violates the law. Second, the word may mean 'contrary to public morality.' Here a person is criminally responsible, regardless of his appreciation of his act's legal wrongfulness, if he is aware at the time of the offending act that society morally condemns such acts. Third, the word may mean 'contrary to one's own conscience.' Under this 'subjective' approach, the accused is not criminally responsible for his offending act if, because of mental disease or defect, he believes that he is morally justified in his conduct—*even though* he may appreciate either that his act is criminal or that it is contrary to public morality." (Emphasis in original.)

The definition proffered by the defendant in his request to charge is the third recognized definition.

that his intermittent explosive disorder prevented him from controlling his violent impulsive behavior. Thus, an instruction adopting the definition asserted by the defendant would not be warranted in this case, and the trial court did not err in failing to so instruct the jury.

## III

The defendant's final claim of error involves the trial court's charge to the jury regarding the doctrine of diminished capacity. In his request to charge, the defendant requested a charge on the defense of diminished capacity. In addition, the defendant requested that the jury be instructed (1) that the defense of diminished capacity should be considered by the jury in the event that the defendant was found to be legally sane at the time of the offense, and (2) that the defense of diminished capacity existed independently of and separately from the insanity defense.[18] The trial court instructed the jury on the doctrine of diminished capacity pursuant to the defendant's request

---

[18] The defendant's request to charge contained the following paragraphs: "Where a defendant has raised the issue of his insanity, and if the jury finds from the evidence in the case beyond a reasonable doubt that the accused was not insane at the time of the alleged offense, it is still the duty of the jury to consider all the evidence in the case, including all evidence offered on the issue as to insanity, in order to determine whether the defendant acted or failed to act with the specific intent necessary to constitute the crimes charged due to a diminshed capacity. This concept exists independent of the insanity issue. It comes into play only if you are satisfied that the defendant was not insane at the time of the offense as I have explained it to you.

"Evidence has been presented in this case indicating that the defendant was of limited or diminished mental capacity at the time of the incident. You may consider this evidence in deciding whether he was mentally capable of forming the specific intent necessary to constitute the crimes charged, as I have previously defined the required specific intent for you. If you have a reasonable doubt on that issue, you must find him not guilty of the offense charged. *State* v. *Hines,* 187 Conn. 199 [445 A.2d 314] (1982)."

The second paragraph of the defendant's request to charge, which contained a proper citation of authority, was accepted and delivered by the trial court in its charge to the jury.

to charge, but refused to include the additional instructions requested by the defendant.[19] The defendant asserts on appeal that the trial court erred in refusing to charge the jury pursuant to his request to charge.

The portion of the defendant's request to charge which the trial court ultimately rejected did not conform to the requirements provided in Practice Book § 852. The defendant failed to provide any citation of authority for his requested instruction. The trial court, therefore, was not bound to provide the defendant's requested charge. See *State* v. *Jenkins,* supra; *State* v. *Timmons,* supra.

The defendant also claims on appeal, however, that the trial court's instruction on diminished capacity was improperly interspersed with the instruction on the defense of insanity.[20] The defendant claims that such

[19] The trial court's charge to the jury on diminished capacity was as follows: "Evidence has been presented in this case indicating that the defendant was of limited mental capacity at the time of the incident. You must consider this evidence in deciding whether he was mentally capable of forming the specific intent necessary to constitute the crime charged, as I have previously defined intent for you. If you have a reasonable doubt on that issue, you must find him not guilty.

"In connection with this issue, you have had the benefit of the testimony of Dr. Griffith for the State and Dr. Merikangas for the defendant and the opinions they have given. In assessing these opinions, you will bear in mind the instructions I previously gave you concerning the weight to be accorded the testimony of expert witnesses, including the opinions based on hypothetical questions.

"You may also give weight to such relevant testimony as you find credible from lay witnesses who have testified concerning the events surrounding the alleged assault."

[20] The record reflects that immediately preceding the trial court's charge on diminished capacity, the trial court instructed the jury on the defense of insanity under General Statues § 53a-13. Moreover, immediately after the instruction on diminished capacity was given, the court gave the following instruction: "It is for the jury to determine (1) the existence of a mental disease or defect and (2) whether such disability resulted in a substantial impairment at the time of the unlawful conduct of the accused's capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

interspersion resulted in inevitable confusion in the jury as to the fact that the two concepts are independent of each other. The record reflects that the defendant specifically excepted to the alleged confusion inherent in the trial court's charge immediately after the delivery of the charge to the jury.[21] His claim, therefore, was properly preserved. See Practice Book § 854.

A defendant is entitled to have the jury adequately and correctly instructed. *State* v. *Hines,* 187 Conn. 199, 445 A.2d 314 (1982). The trial court's jury instructions must therefore be clear, accurate, complete and comprehensible. *State* v. *Kurvin,* supra, 561. We do not, however, view instructions in artificial isolation from the overall charge. *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). In reviewing the charge as a whole, the instructions "need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance." *State* v. *Parent,* 8 Conn. App. 469, 476, 513 A.2d 725 (1986). The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result. *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645 (1974); *State* v. *Parent,* supra. In applying this test, the substance rather than the form of what is said is considered. *State* v. *Kurvin,* supra, 565.

We find that the charge given by the trial court, while not perfectly clear, was both legally correct and suffi-

---

[21] In his exception to the trial court's charge, the defendant stated: "With regards to the defense of diminished capacity, under State versus Hines, I requested in my request to charge, Your Honor, I think it was in the insanity issue and was not clear to the jury that these are two separate and distinct defenses, that they can necessarily reject the insanity defense and still find the defendant lacked substantial capacity to form an intent. That is not clear from Your Honor's charge. At least I found it somewhat confusing."

cient in presenting the case to the jury. The psychiatric evidence presented by the defendant at trial indicated that the defendant not only suffered from possible insanity, but that he was mentally retarded as well. In its charge to the jury, the trial court correctly apprised the jury of the law regarding the defense of diminished capacity, as recognized in this state. See *State* v. *Burge,* 195 Conn. 232, 487 A.2d 532 (1985); *State* v. *Hines,* supra; *State* v. *Donahue,* 141 Conn. 656, 109 A.2d 364 (1954), cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257 (1955). Moreover, the jury was repeatedly instructed as to the requirement of a finding of specific intent as an element of the crime. The trial court likewise instructed the jury on numerous occasions that it was the state's burden to prove all of the elements of the crime, including intent, beyond a reasonable doubt. We find, therefore, that the charge, considered as a whole and in the context of the factual posture of this case, gave the jury the practical guidance needed.

Although the court's instruction was not erroneous, it would have been better if it had separated the instructions given on the defense of insanity and the defense of diminished capacity. The juxtaposition of the two concepts could, in certain situations, be confusing to a jury. Such a situation, however, is not presented here.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion, BORDEN, J., concurred.

SPALLONE, J., dissenting. I agree that the majority's position is consistent with past precedent of our Supreme Court. A review of the relevant cases, however, reveals that the argument set forth in this dissent has not been addressed by our Supreme Court. In light of the passage of time since the enactment of General Statutes § 54-84 (b) and the particular con-

siderations set forth in this opinion, I believe that our Supreme Court would be likely to interpret this statute in a manner consistent with the position set forth below. Accordingly, I dissent.

The primary issue in this case is identical to that raised in *State* v. *Burke,* 182 Conn. 330, 438 A.2d 93 (1980): "Whether the trial court's failure to give the 'no unfavorable inference' instruction mandated by General Statutes § 54-84 (b) is reversible error even when the defendant's trial counsel failed to object to its omission from the charge delivered by the trial court." In *Burke,* the court found reversible error, but noted that the statute had been in effect for four months, and expressly limited its holding to the precise facts of the case. Id., 332 n.3. Furthermore, the court noted that "[h]ad there been any indication that defense counsel had made a strategic decision to sit silently at the close of the charge, and then raise this claim of error if the verdict proved unpalatable . . . we would have refused to review the defendant's claim." Id. Following this reasoning and the elaborations below, I would hold that when a defendant fails to object to a court's omission of a no adverse inference instruction from its charge, the defendant has impliedly ratified the charge, thereby providing the functional equivalent of a request to the court that it omit the no adverse inference instruction from its charge.

Because this issue presented is one of statutory construction,[1] we must first look to the statute itself. Under General Statutes § 54-84 (b), the defendant is clearly given the *option* of whether the no adverse infer-

---

[1] As the majority makes clear, the defendant has a constitutional right to a no adverse inference instruction only if he asks for it. Since the defendant made no request here, no constitutional right was violated, and our concern is only whether his rights under General Statutes § 54-84 (b) were violated.

ence charge is to be given. Thus, the instruction at issue is not one so fundamental, such as an instruction on the duty of the state to prove guilt beyond a reasonable doubt, that it *must* be included in the charge apart from the desires of the parties. Because of this option, it is axiomatic that a defendant may receive a fair trial where the charge is given as well as where the charge is not given. It cannot be said, therefore, that the failure of the trial court to give the no adverse inference charge automatically deprives the defendant of a fair trial.

Our next question is to determine how the defendant has exercised that option. Initially, it must be noted that the "no adverse inference" charge concerns a matter of paramount importance in every defense attorney's trial strategy. Every defense attorney must ask himself whether it is in his client's best interests for his client to testify on his own behalf. As part of that decision defense counsel must inevitably consider the impact on the jury if his client does not testify—in short, whether that jury will draw unfavorable inferences from the refusal of his client to testify. The upshot, therefore, is that the very matter covered by the adverse inference instruction will be considered, and considered thoroughly, by the defense counsel when conducting his client's defense. Of course, the defense attorney may not actually desire that the charge be given, since he may decide that the charge itself only calls greater attention to the defendant's decision not to testify. He will nevertheless be highly aware of the fact that, if his client refuses to testify, a jury might draw adverse inferences.

This high awareness of the defense attorney on this matter is critical in determining whether a defendant has exercised his option under General Statutes § 54-84 (b) to have the no adverse inference instruction omitted from the charge. The point cannot be overem-

phasized that the trial court's failure to charge on this subject is not a failure to instruct on some obscure, esoteric, or subtle point of law, but on a matter at the forefront of a defense attorney's consciousness when preparing his trial strategy. Because of this high awareness, I would conclude that when defense counsel elects by his silence that the instruction be given and then fails to object to its omission from the charge, his failure may reasonably and logically be construed as an intentional exercise of his option under the statute that the instruction not be given.

The pitfalls of a contrary interpretation are obvious. As the law is currently interpreted, a defendant may elect by his silence that the instruction be given, sit silently where the court fails to give it, and, if the outcome is unfavorable, be guaranteed a new trial. Such a result is contrary to our basic theories of jurisprudence; see *State* v. *Burke,* supra; and finds no support in the legislative history of General Statutes § 54-84 (b). Furthermore, the majority's interpretation of General Statutes § 54-84 (b) places a defense counsel in an ethical dilemma between his duty to the court and his duty to his client. If he, as a matter of tactics, intentionally remains silent after the court has omitted the anticipated charge, he promotes his client's interests by ensuring him an automatic reversal of an unfavorable verdict. By this same conduct, however, he also violates his duty as an attorney not to engage in conduct that is prejudicial to the administration of justice. See Rules of Professional Conduct, Rules 3.1, 3.2, 3.3, *State* v. *Burke,* supra. The temptation to violate the ethical code will be all the greater in this case because the violation would be virtually incapable of discovery. While the court in *State* v. *Burke,* supra, stated that it would refuse to review a claim if it appeared that the defendant's silence was a tactical maneuver designed to foster appellate reversal, it is folly to believe that an

appellate court could ever make such a determination. An appellate court may only consider those matters contained in the record. Practice Book § 4061 (formerly § 3060D); *State* v. *Sinclair,* 197 Conn. 574, 586 n.14, 500 A.2d 539 (1985). It is hardly conceivable that a defense counsel's motives will be contained in the record.

The majority's statement that trial counsel assured us in oral argument that his silence was inadvertent and not a trial tactic only highlights the problems of its interpretation. Just as defense counsel should not be put in a position of choosing between his client's interests and his duty to the court, an appellate court should not be put into the position of determining a defense counsel's credibility. The point is not whether or not we believe the defense counsel's assertions in this case, but that we are forced to make this decision at all. A statute should not be interpreted in a manner which gives defense counsel incentive to sidestep the law and makes us decide whether his motives were pure.

Applying this interpretation to the present case, I would hold that the defendant's failure to object to the court's omission of the no adverse inference instruction from its charge amounted to a consent to and a ratification of the charge and was the functional equivalent of a request to the court that it not include the no adverse inference instruction in its charge. Accordingly, I dissent and would find no error.